COURT OF APPEALS OF VIRGINIA


Present: Judges Annunziata, Bumgardner and Frank
Argued at Salem, Virginia


ROANOKE CITY DEPARTMENT
 OF SOCIAL SERVICES
                                        OPINION BY
v.   Record No. 1157-00-3        JUDGE ROBERT P. FRANK
                                        APRIL 24, 2001
FLOYD ALLEN HEIDE, II


          FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                  Robert P. Doherty, Jr., Judge

          Allen T. Wilson, Assistant City Attorney
          (William M. Hackworth, City Attorney, on
          brief), for appellant.

          John H. Kennett, Jr., for appellee.


     Roanoke City Department of Social Services (DSS) appeals the

decision of the trial court denying DSS's petition to terminate

the residual parental rights of Floyd Allen Heide, II, (father).

Finding no error, we affirm the trial court's decision.

                      I.  BACKGROUND

     On January 11, 1999, the Juvenile and Domestic Relations

District Court for the City of Roanoke (JDR court) approved the

foster care plans requesting a change of goal to adoption for

Kescha Lynn Heide and Floyd Allen Heide, III.  On January 19,

1999, DSS filed petitions, pursuant to Code § 16.1-283(C)(2),

with the JDR court requesting the termination of the residual

parental rights of father to Kescha Lynn Heide and Floyd Allen

Heide, III.

On October 22, 1999, the JDR court denied the petitions filed by DSS. DSS timely appealed the JDR court's decision to the Circuit Court for the City of Roanoke (trial court). On February 1, 2000, the parties presented evidence and the trial court denied the termination petitions, stating:

> Had this case got into Court the next month after the J & D Court decision, then every single thing that the Department of Social Services has presented would be just as clear as could be, and terminating parental rights would be done just about as fast as I could find a rubber stamp to do it, but during that delay for some particular reason, I don't know what it is, the father has made enough changes to pull himself up above that level. . . .
>
> From what I have heard thus far, I am just plain not willing to cut off all parental rights. Six months or a year ago, I would have done it in a flash, but the delay it took to get this thing up and the way he has pulled himself up, I am not willing to do it.

In its order entered May 5, 2000, the trial court found:

> Further, based only on the evidence presented by DSS, and excluding all consideration of the limited testimony of the children's father, the Court found that DSS had not born [sic] its burden of proof by clear and convincing evidence that termination of the father's parental rights were in the best interest of the children, or that the father had failed to communicate or visit with the children, or that the father had failed to meet the goals that were set for him by stopping his consumption of alcohol, by failing to get steady full time employment, by failing to pay his bills, by failing to complete parenting classes or by failing to establish an appropriate, clean and stable home environment in which to raise the children. The failure of this evidence was that it ended with respect to the father's situation in January, 1999. That was 13 months prior to the de novo hearing on the petitions to terminate the parental rights of the father. There was no evidence

as to whether the father had substantially remedied the conditions which led to the foster care placement of the children since January, 1999.  The Court was not presented with any evidence that it was in the best interest of the children to terminate their parental rights at the time of the de novo hearing.  Evidence was not presented to overcome the presumption that the best interests of the children would be served by not separating them permanently from their natural parents.

DSS first became involved with Kescha Lynn Heide in February 1996, when Katye Hale, a DSS prevention services worker, received a services referral from a local hospital.  The hospital was concerned about the parental abilities of Kescha's parents, father and Tammy Lynn Cook.  From the beginning, Hale's concerns were to educate the parents to improve their parenting skills, improve the family's housing, budget the family's income, and address father's reported alcoholism.  There also were concerns about father's judgment, personal hygiene, general child care knowledge, and ability to follow instructions.

Over a period of years, DSS referred father to a number of alcohol rehabilitation programs.  He never completed any of the programs.

In September 1996, Hale investigated a protective services complaint involving a cigarette burn on Kescha's forehead.  Father and Cook could not explain how the child was burned.  It was never clear what happened, and the complaint was founded for physical neglect.

On October 7, 1996, the JDR court held a review hearing and placed Kescha in the custody of DSS.  Crystal Brake was the caseworker when Kescha came into foster care.

In February 1997, the JDR court returned Kescha to father's custody under specific conditions, including his completion of substance abuse treatment.  On February 15, 1997, Kescha came back into foster care through an entrustment agreement signed by father.  Kescha has remained in foster care since that time.

Floyd Allen Heide, III, ("Allen") was born on April 8, 1997. Immediately following Allen's birth, DSS filed a request for a protective order with the JDR court.  The protective order, entered on May 1, 1997, stated, in part, that father and Cook were to cooperate in the provision of reasonable services or programs designed to protect Allen's life, health, and normal development.

In May 1998, DSS received a complaint stating father had been arrested for contributing to the delinquency of a minor in association with driving while intoxicated with Allen in his vehicle.  Allen was removed from his parents' custody at that time and placed in foster care in the same home as Kescha.

At the time Allen was placed in foster care, father had not followed through with the services recommended by DSS.  Father was minimizing his alcoholism, but on May 20, 1998, when he was released from jail, he entered a detox program.  He left the program on May 24, 1998.  The staff at the detox program recommended that father enter PCU, an intensive in-patient substance abuse treatment program.  He entered PCU on August 12, 1998 and was discharged on September 14, 1998.

On September 16, 1998, the JDR court ordered father to successfully complete the Oxford House Program.  Father told Brake he was attending all of his group sessions and living at

Oxford House.  On December 29, 1998, father admitted he lied to Brake about living at Oxford House, stating that he again was residing with Cook.  Brake learned that father had been asked to leave Oxford House after he continued to drink alcohol.  Father's case was closed and he was not participating in any counseling. His last group counseling session was on November 4, 1998, and his last individual counseling session was October 12, 1998. Father only participated in five sessions of what was to be a twenty-six week program.

On January 11, 1999, the foster care plan goal was changed to adoption.  At the time the goal was changed, father had not fully completed the services offered by DSS.  Kescha had been in foster care for two and one-half years, and Allen had been in foster care for eight months.  William Bailey, Foster Care supervisor for DSS, testified that once the foster care plan goal changed to adoption, the focus shifted from family reunification to a focus on placement for adoption.  However, DSS did provide visitation for the parents during this period.

Father only became serious about his substance abuse treatment after the foster care plan goal was changed to adoption.  Father returned to individual counseling on January 18, 1999, and group counseling on February 10, 1999.

DSS was aware that following the goal change, father had made progress in addressing DSS's concerns.  Bailey testified that DSS would not consider changing the goal from adoption because too much time had passed and the children had bonded with their foster parents.

After the goal change, father completed substance abuse counseling at Blue Ridge Community Services. He has worked at the Hotel Roanoke for approximately one year and is a "good employee." Father invited a social worker to visit and investigate his house but DSS declined to do so because it no longer provided services to him. Father testified he attends three Alcohol Anonymous meetings per week, regularly takes antabuse, and has not had a drink since his arrest in May 1998.[1]

## II. ANALYSIS

DSS contends the trial court applied the wrong statutory standard in requiring it to provide continuing services to father after the date the petitions were filed to terminate father's parental rights. DSS misreads the trial court's decision.

The trial court did not require DSS to provide post-petition services. Rather, the trial court found that DSS failed to meet its burden of proof to show that father had not remedied the conditions that led to foster care placement after the filing of the petitions in January 1999.[2] The evidence established that

---

[1] DSS contends, on appeal, that it was not given the opportunity to challenge father's "progress" on cross-examination because the court abruptly ended the proceeding during father's direct examination. Because DSS did not object to the court's termination of the proceeding at trial, we will not consider that issue on appeal. Rule 5A:18.

[2] Section 16.1-283(C) states:

> The residual parental rights of a parent or parents of a child placed in foster care as a result of court commitment, an entrustment agreement entered into by the parent or parents or other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in

the best interests of the child and that:

1.  The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship.  Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition; or

2.  The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.  Proof that the parent or parents, without good cause, have failed or been unable to make substantial progress towards elimination of the conditions which led to or required continuation of the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court or any other plan jointly designed and agreed to by the parent or parents and a public or private social, medical, mental health or other rehabilitative agency shall constitute prima facie evidence of this condition.  The court shall take into consideration the prior efforts of such agencies to rehabilitate the parent or parents prior to the placement of the child in foster care.

father completed substance abuse treatment and maintained steady employment. The trial court found that "[t]he court was not presented with any evidence that it was in the best interests of the children to terminate their parental rights at the time of the de novo hearing."

Consistent with its first contention, DSS further contends that under Code § 16.1-283(C), father had a finite period of time to "make substantial progress towards elimination of the conditions which led to . . . the child's foster care placement in accordance with their obligations under and within the time limits or goals set forth in a foster care plan filed with the court . . . ." Code § 16.1-283(C)(2). DSS argues that under Code § 16.1-283(C)(2), the parent has a reasonable period of time not to exceed twelve months from the date the child was placed in foster care "to remedy substantially the conditions . . . ." Essentially, DSS argues that the statute mandates a twelve month cut-off beyond which a parent's efforts to remedy the conditions are not relevant. We disagree.

Code § 16.1-283(C) speaks in the conjunctive. The court must find, upon clear and convincing evidence, (1) that termination is in the best interests of the child and (2) that

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. . . .

Code § 16.1-283(C).

DSS's argument only focuses on the second prong of Code § 16.1-263(C).

Here, the trial court found that DSS had not borne its burden to prove that termination was in the children's best interests at the time of the de novo hearing. The trial court found that father had "pulled himself up." We find the evidence supports the trial court's findings.

"On review, '[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991) (citations omitted). Where the trial court hears the evidence ore tenus, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it. See Lowe v. Dep't of Pub. Welfare, 231 Va. 277, 282, 343 S.E.2d 70, 73 (1986) (citation omitted).

In Lecky v. Reed, 20 Va. App. 306, 456 S.E.2d 538 (1995), the trial court found that termination would be in the best interests of the child and that the mother had been "'unwilling and unable to remedy substantially the conditions which led to the foster care placement . . . .'" Id. at 310, 456 S.E.2d at 540. Nevertheless, the trial court found that the mother's young age, fourteen, constituted "good cause" under the statute and denied termination. Id. at 310-11, 456 S.E.2d at 540. In reviewing the decision of the trial court, we held:

The statute clearly contemplates that efforts to resolve the "conditions" relevant to termination are constrained by time. Code § 16.1-283(C)(2). Absent "good cause," a parent or parents receiving the "reasonable and appropriate" services of "rehabilitative agencies" must "remedy substantially" the "conditions which led to . . . foster care" of the child in a "reasonable period not to exceed twelve months." Id. This provision protects the family unit and attendant rights of both parents and child, while assuring resolution of the parent/child relationship without interminable delay. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming . . . responsibilities." Kaywood[v. Halifax County Dep't of Social Servs.], 10 Va. App. [535,] 540, 394 S.E.2d [492,] 495 [(1990)].

Here, the record clearly supports the trial court's determination that (1) termination was in [the child's] best interests, and (2) that mother had been either unwilling or unable to remedy those conditions which led to [the child's] placement in foster care within twelve months, notwithstanding the significant efforts of DSS. Accordingly, these requirements of Code § 16.1-283(C) indispensable to termination of a mother's parental rights were satisfied. Nevertheless, the court declined to terminate because mother's "age" provided "good cause" . . . .

Id. at 312, 456 S.E.2d at 540-41.

In Lecky, the issue on appeal was not the best interests of the child; rather we only addressed the time constraints contained in Code § 16.1-283(C).

In this case, DSS's construction of the statute would deny the fact finder the opportunity to evaluate the present best interests of the child. The trial court may discount the parent's current "progress" if the best interests of the child would be served by termination. However, as in the instant case,

the trial court may determine that a parent's delayed, but nonetheless substantial, progress may overcome the time delay. We will not deprive the trial court of the opportunity to weigh the rights of the parents and the best interests of the child.

"When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (citing Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982); Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990)). "Code § 16.1-283 embodies '[t]he statutory scheme for the . . . termination of residual parental rights in this Commonwealth.'" Lecky, 20 Va. App. at 311, 456 S.E.2d at 540 (quoting Rader v. Montgomery County Dep't of Social Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 235 (1988)). "'In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests.'" Logan, 13 Va. App. at 128, 409 S.E.2d at 463 (quoting Farley, 9 Va. App. at 328, 387 S.E.2d at 795). "The trial court's judgment, 'when based on evidence heard ore tenus, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" Id. (quoting Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988)).

As we stated in Lecky, "'[i]t is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming . . . responsibilities.'" Lecky, 20 Va. App. at 312, 456 S.E.2d at 540 (quoting Kaywood, 10 Va. App. at 540, 394

S.E.2d at 495).  However, under the facts of this case, when the trial court heard the evidence and determined it would not be in the best interests of the children to terminate father's residual parental rights, we cannot say the trial court abused its discretion.  Therefore, for these reasons, we affirm the decision of the trial court.

<u>Affirmed.</u>