COURT OF APPEALS OF VIRGINIA


Present:  Judges Elder, Bray and Senior Judge Overton


MARTHA ANN PERKINS
                                    MEMORANDUM OPINION*
v.   Record No. 1080-01-3               PER CURIAM
                                     SEPTEMBER 18, 2001
LYNCHBURG DIVISION OF SOCIAL SERVICES


          FROM THE CIRCUIT COURT OF THE CITY OF LYNCHBURG
                   Mosby G. Perrow, III, Judge

          (G. Beth Packert, on briefs), for appellant.
          Appellant submitting on briefs.

          (Joyce M. Coleman, Senior Assistant City
          Attorney, on brief), for appellee.  Appellee
          submitting on brief.


     Martha Ann Perkins (mother) appeals the decision of the

circuit court terminating her residual parental rights in her

children, Leroy Raymond Perkins and Thomas Henry Hosanna Perkins.

On appeal, mother contends the trial court erred in finding the

evidence sufficient to terminate her parental rights under Code

§ 16.1-283(B).  Mother asks that the judgment of the trial court

be vacated and her parental rights restored.  Upon reviewing the

record and briefs of the parties, we conclude that this appeal is

without merit.  Accordingly, we affirm the decision of the trial

court.

---

     * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

On appeal, we view the evidence and all the reasonable inferences in the light most favorable to appellee as the party prevailing below.  See McGuire v. McGuire, 10 Va. App. 248, 250, 391 S.E.2d 344, 346 (1990).

## Background

Social worker Rebecca Neilans began providing ongoing child protective services for Leroy in 1997, after receiving complaints that the child suffered from inadequate shelter.  Neilans testified that during the twenty-seven months she worked with mother and her family, they moved seven times without notifying her.  Neilans explained mother repeatedly denied her access to the family's residences and that each time Neilans visited, she noted trash piled outside the houses.  Mother refused to speak with Neilans and would not cooperate with the social worker's efforts to establish a service plan.  While mother was pregnant with Thomas, she accepted aid from Neilans, but cut off contact soon after the child's birth in February 1998.

In April 1999, after trying for four months to enter mother's residence, Neilans entered the house.  Inside she discovered boxes, papers, and clothing piled high throughout the residence. Clothing and other items were piled within inches of the wood stove used to heat the home.  Shortly thereafter, the family moved to a different house.  Similarly, the new house contained piles of trash and clothing.  Neilans testified the house had no refrigerator.  Mother announced her plans to move to Pennsylvania

-

to be close to the children's father, a convicted sex offender, who had previously committed sodomy upon a young boy. Mother's mother admitted to Neilans that mother had recently told her she was going to the store and did not return for three weeks.

The Lynchburg Division of Social Services (LDSS) filed a petition for a protective order on March 17, 1999 and a petition for emergency removal on June 16, 1999. Neilans explained mother failed to enroll in parenting classes, did not cooperate with LDSS and failed to take Thomas to the doctor for his immunizations.

After LDSS removed the children from mother's home, social worker Sally Barca took over the case. She attempted to establish a stable visitation schedule, re-establish Medicaid attending, enroll mother in parenting classes, and have mother undergo a psychological evaluation. Dr. James Anderson performed the psychological evaluation, but mother failed to complete the parenting classes. Barca was unable to establish regular visitation between mother and her children. Due to mother's incarceration, the first visit occurred on October 23, 1999. Barca noted that mother avoided the children during the visit and that Leroy appeared frightened of mother. Barca attempted to counsel mother about what she would need to do in order to regain custody of her children, but mother became angry and left. Mother failed to attend a visit scheduled for November 6, 1999, and she did not ask for any more visits until after LDSS filed for termination in February 2000. When Barca visited mother's

-

residence on May 2, 2000, she found trash, furniture and shopping carts scattered outside the house.  Inside, she found trash bags and clothing spread about and detected a strong odor of garbage.

Dr. Anderson qualified as an expert and testified about his evaluation of mother.  He explained she showed little ability to communicate with children at an age appropriate level and showed no ability to identify children's feelings.  He found that mother has very little understanding about how to handle child rearing situations, including recognizing developmental needs and potentially serious medical problems.  Dr. Anderson felt it was unlikely mother could respond to education or training to improve her parenting skills.  In 1991, mother's parental rights in her four older children were terminated.  The guardian ad litem for Leroy and Thomas supported LDSS's petitions that termination of parental rights would be in the children's best interests.

## ANALYSIS

In pertinent part, Code § 16.1-283(B) provides:

> The residual parental rights of a parent or parents of a child found by the court to be neglected or abused and placed in foster care as a result of (i) court commitment; (ii) an entrustment agreement entered into by the parent or parents; or (iii) other voluntary relinquishment by the parent or parents may be terminated if the court finds, based upon clear and convincing evidence, that it is in the best interests of the child and that:

> 1.  The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and

-

2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

The trial court found that Leroy and Thomas were neglected and placed into foster care as a result of mother's neglect, that the neglect represented a substantial and serious threat to their life, health, and development, that it was unlikely that the conditions which brought the children into care could sufficiently be corrected to allow them to return home, and that the termination was in the best interests of the children. "Where the trial court hears the evidence ore tenus, its decision is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Roanoke City Dep't of Soc. Servs. v. Heide, 35 Va. App. 328, 336, 544 S.E.2d 890, 894 (2001).

Mother failed to maintain a safe environment for her children. Her residences over the years were consistently littered with trash and clothing. In one home these items were piled next to a wood burning stove. In another residence the family did not have a working refrigerator and the social worker observed dirty clothes throughout the kitchen. Mother failed to

-

keep Thomas' immunization shots current and had not been providing him with basic medical care. The trial court did not err in finding that the children were neglected in such a way that endangered their life, health and development.

Code § 16.1-283(B)(2)(c) provides that prima facie evidence of the conditions set forth in subsection (B)(2) exists when there is proof that the parent, "without good cause, [has] not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to . . . prevent the neglect of the child." Mother failed to achieve any goals or effect any changes. She was uncooperative and avoided the social workers. She failed to maintain contact with her children and allowed her Medicaid and other benefits to lapse. The testimony of Dr. Anderson indicated that mother was unlikely and unwilling to correct the problems that led to the neglect of her children. The trial court, faced with the facts contained in this record, was justified in finding that the children were not likely to be returned to mother within a reasonable period of time.

Accordingly, the order appealed from is affirmed.

Affirmed.

-