COURT OF APPEALS OF VIRGINIA


Present: Judges Elder, Felton and Senior Judge Willis


JOSEPH HAYES

                                          MEMORANDUM OPINION[*]

v.      Record No. 1166-05-2                         PER CURIAM
                                                NOVEMBER 1, 2005

PETERSBURG DEPARTMENT OF
 SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Pamela S. Baskervill, Judge

(Katina C. Whitfield; Law Office of Katina C. Whitfield, on brief),
for appellant. Appellant submitting on brief.

(Joan M. O'Donnell, on brief), for appellee. Appellee submitting
on briefs.

(James Wicker Traylor, on brief), Guardian *ad litem* for the minor
child. Guardian *ad litem* submitting on brief.


On April 15, 2005, the trial court entered an order terminating the parental rights of Joseph

Hayes to his son, Y.H., pursuant to Code § 16.1-283. On appeal, Hayes contends the Petersburg

Department of Social Services (PDSS) did not prove by clear and convincing evidence that the

termination was in the best interests of the child. We disagree, and affirm the decision of the trial

court.

FACTS

We view the evidence in the light most favorable to the prevailing party below and grant to

it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of

Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

Y.H. was born on August 15, 2003 to Tiffany Hobson. At the time of Y.H.'s birth, Hobson admitted using cocaine and alcohol during her pregnancy.[1] Within forty-eight hours of his birth, cocaine and alcohol were detected in Y.H.'s system, leading to a medical diagnosis that he had been exposed to a controlled substance *in utero*. By emergency order entered on August 19, 2003, Y.H. was placed in the temporary custody of PDSS.

Hayes was present at Y.H.'s birth but did not admit paternity. He refused to comply with PDSS's request for a drug test. A court-ordered paternity test later confirmed that he was the biological father of Y.H. Hayes had never lived with or been married to Hobson.

The initial Foster Care Service Plan, dated October 16, 2003, required Hayes to maintain appropriate housing, complete a psychological evaluation, successfully complete parenting classes, actively participate in counseling services, participate in a drug and alcohol assessment, maintain visitation with the child, and comply with PDSS's requirements for drug screening. Although Hayes complied with most of the requirements, he did not seek therapy until June of 2004.

At the time of the termination hearing, Y.H. had remained in the same foster home since he was placed in the custody of PDSS. Y.H. responded affectionately to the foster family, and tried to imitate the foster father. By contrast, during Hayes' regular supervised visitation periods with Y.H., the child did not respond to Hayes by name or in a manner different from the social workers at PDSS. During early visitation with Y.H., Hayes did not change the baby's diaper as needed. After being advised that the child's diaper must be changed when needed, Hayes changed the diaper at every visitation, regardless of whether the diaper was dirty or not. Hayes exhibited discomfort when handling Y.H. at visitation sessions.

---

[1] Hobson had other children who previously had been removed from her care upon an adjudication of neglect. Moreover, at the time of Hayes' termination hearing, Hobson's parental rights to Y.H. had been terminated.

Hayes had a reported history of schizophrenia. He had been unemployed and had received SSI benefits since 1992. He was admitted to Central State Hospital in 1991 with a primary diagnosis of polysubstance abuse, psychotic disorder NOS, and borderline intellectual functioning. Hayes also was hospitalized at Poplar Springs Hospital in 1995. His discharge summary from Poplar Springs indicated a diagnosis at the time of admission of schizoaffective disorder, bipolar and paranoid personality.

Dr. Greg Wolber conducted a psychological evaluation of Hayes in October of 2003. Wolber concluded that relatively intensive supervision and monitoring would be necessary if Hayes were to gain custody of Y.H. Such supervision would include periodic evaluation of Hayes' mental state, including an assessment of his need for medication. Drug screening would be required upon any indication that Hayes had become involved with drugs. Periodic observations for signs of increasing psychopathology also were warranted. Wolber stated that Hayes became confused when under stress and that he had a tendency to minimize or deny his difficulties. In fact, after PDSS filed a Foster Care Service Plan with an amended goal of adoption, Hayes did not appear to understand the implication of this change although it had previously been explained to him.

Hayes testified he had not been hospitalized since 1995 for psychotic episodes or mental health issues. Hayes stated he had cared for his ailing mother for four years prior to her death. Hayes' sister and cousin each indicated willingness to assist Hayes in caring for Y.H., although neither lived in Hayes' home on a permanent basis.

The trial court found that it was in Y.H.'s best interests to terminate Hayes' parental rights. The trial court specifically found: (1) the use of drugs leading to Y.H. being born with drugs and alcohol in his system presented a serious and substantial threat to Y.H.'s life, health, and development, and it was unlikely the conditions which resulted in such neglect could be substantially corrected or eliminated to allow the child's safe placement with Hayes within a

reasonable period of time; (2) Hayes suffers from a mental or emotional illness or deficiency of such severity that there is no reasonable expectation that he will be able to undertake responsibility for Y.H.'s care in accordance with his age and stage of development; and (3) Hayes, without good cause, did not respond or follow through with appropriate, available, and reasonable rehabilitative efforts on the part of PDSS to eliminate or prevent the neglect or abuse of the child.

ANALYSIS

On appeal, we will not disturb a trial court's findings unless they are plainly wrong or without evidentiary support. See Roanoke City Dep't of Soc. Servs. v. Heide, 35 Va. App. 328, 336, 544 S.E.2d 890, 894 (2001).

Pursuant to Code § 16.1-283(B), a parent's rights to a neglected or abused child may be terminated upon clear and convincing evidence that such action is in the best interests of the child and

> (2) It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. . . .
>
> Proof of any of the following shall constitute prima facie evidence of the conditions set forth in subdivision B 2 hereof:
>
> (a) The parent or parents are suffering from a mental or emotional illness or mental deficiency of such severity that there is no reasonable expectation that such parent will be able to undertake responsibility for the care needed by the child in accordance with his age and stage of development; [or]
>
>      *    *    *    *    *    *    *
>
> (c) The parent or parents, without good cause, have not responded to or followed through with appropriate, available and reasonable rehabilitative efforts on the part of social, medical, mental health or other rehabilitative agencies designed to reduce, eliminate or prevent the neglect or abuse of the child.

Without challenging the trial court's findings of the circumstances set forth in Code § 16.1-283(B)(2) (a) and (c), Hayes contends PDSS did not provide clear and convincing evidence that the termination was in the best interests of the child. The evidence proved, however, that Hayes twice had received inpatient treatment for mental illness. He had been diagnosed in 1991 with polysubstance abuse, psychotic disorder NOS, and borderline intellectual functioning. In 1995, Hayes was diagnosed with schizoaffective disorder, bipolar and paranoid personality. Hayes had not worked since 1992, subsisting on SSI benefits. Although Hayes regularly attended visitation with Y.H., Hayes did not respond appropriately to the child's needs and appeared uncomfortable with him. Hayes was not permitted unsupervised visitation with Y.H. Two relatives indicated a willingness to help Hayes with Y.H., but neither lived with Hayes permanently or was available to assist Hayes continuously. Wolber opined that Hayes became confused under stress, tended to minimize or deny his limitations, and would require ongoing supervision and monitoring if he was granted custody of Y.H. Hayes did not appear to understand matters pertaining to Y.H. that previously had been explained to him. Moreover, Hayes had not availed himself of the rehabilitative services provided him, as he did not seek mental health therapy until June of 2004, eight months after he was ordered to do so by the initial Foster Care Service Plan.

At the time of the termination hearing, Y.H. had resided with the same foster family for twenty months. Y.H. was thriving and on target for his age. He expressed affection for the foster family, even imitating his foster father. By contrast, Y.H. demonstrated no special attachment to Hayes during the visitation sessions.

We recognize that "'[t]he termination of [residual] parental rights is a grave, drastic and irreversible action.'" Helen W. v. Fairfax County Dep't of Human Dev., 12 Va. App. 877, 883, 407 S.E.2d 25, 28-28 (1991) (citation omitted). However, "[i]t is clearly not in the best interests

of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." <u>Kaywood v. Halifax County Dep't of Soc. Servs.</u>, 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

We find the admissible evidence proved, clearly and convincingly, that termination of Hayes' parental rights was in Y.H.'s best interests. Accordingly, we affirm the decision of the trial court.

<u>Affirmed.</u>