COURT OF APPEALS OF VIRGINIA

Present: Judges Petty, Chafin and Senior Judge Annunziata

TRAVIS CONLEY JONES

v.      Record No. 1540-14-3

BRISTOL DEPARTMENT OF SOCIAL SERVICES

MEMORANDUM OPINION*
PER CURIAM
FEBRUARY 10, 2015

FROM THE CIRCUIT COURT OF THE CITY OF BRISTOL
Sage B. Johnson, Judge

(Joshua S. Cumbow; Johnson & Cumbow, on brief), for appellant.

(Edward G. Stout; Mark D. Haugh, Guardian *ad litem* for the minor
child; Curcio & Stout, PC; HPS Legal Group, on brief), for appellee.

Travis Conley Jones (father) appeals an order terminating his parental rights to his child.

Father argues the circuit court erred when it found there was clear and convincing evidence to

terminate his parental rights pursuant to Code § 16.1-283(C)(2). Upon reviewing the record and

briefs of the parties, we conclude that this appeal is without merit. Accordingly, we summarily

affirm the decision of the circuit court. See Rule 5A:27.

BACKGROUND

The record does not include a timely filed transcript. The circuit court entered the final

order on July 14, 2014. Pursuant to Rule 5A:8(a), the transcript was due by September 12, 2014.

The transcript was not filed until October 7, 2014; therefore, it is not part of the record. See Rule

5A:8(a). We have reviewed the record and the opening brief. The circuit court wrote a detailed

letter opinion that included the case's facts, the court's findings, and the court's analysis. Since

the record includes the letter opinion and the exhibits from the hearing, we conclude that the

---

* Pursuant to Code § 17.1-413, this opinion is not designated for publication.

transcript is not necessary for a review of father's argument on appeal. See Anderson v. Commonwealth, 13 Va. App. 506, 508-09, 413 S.E.2d 75, 76-77 (1992); Turner v. Commonwealth, 2 Va. App. 96, 99-100, 341 S.E.2d 400, 402 (1986).

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax Cnty. Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

Father and Janie Danielle Williams (mother) are the biological parents to a child who was born in November 2010.[1] The child was born prematurely at twenty-nine weeks and, as a result, has numerous medical issues, including chronic lung disease and gastroesophageal reflux disease (GERD).

The Department was working with and assessing the family from March 5, 2013 to April 19, 2013. The Department determined that the family needed services, and mother signed a family services agreement.

On April 5, 2013, the child was taken to the hospital "due to an emergency resulting from medical neglect." The child went into respiratory distress and was in a coma for twelve days. On April 19, 2013, the Department opened a child protective services investigation due to allegations of medical neglect. On April 29, 2013, the Bristol Department of Social Services (the Department) removed the child from the parents' custody and placed him in foster care.

The Department required father to obtain and maintain employment and suitable housing. He also was required to attend parenting classes and complete an anger management course, a parenting assessment, and a substance abuse assessment. The Department further stated that he was to follow through with any recommendations and stay in contact and cooperate with the Department.

---

[1] The parents also have two younger children.

Father participated in a parenting assessment with Dr. Rick Carroll. Dr. Carroll found that father was "struggling with a number of facets in his life," including "mental and emotional impairments, his limited family and social support, his past and pending legal involvement, the fact he cannot drive and is reliant on others for transportation . . . , his acknowledged chronic substance abuse, and his fragile self-concept." Dr. Carroll made several recommendations, including mental health and psychiatric consultations, medication and counseling as deemed necessary, random drug screens, restoration of his driver's license, employment to pay his fines, and parenting classes.

On February 26, 2014, the Bristol Juvenile and Domestic Relations District Court terminated mother's and father's parental rights. They appealed to the circuit court.

On May 19, 2014, the circuit court heard evidence and argument. On June 26, 2014, the circuit court issued its letter opinion. The circuit court found that father was not cooperating with the Department and failed to follow through with the Department's requirements. The circuit court stated that father "actively resists and dismisses the Department's efforts." He did not have adequate housing for the child, nor did he have reliable transportation. The circuit court found that he had not "expressed any interest in how to improve [the child's] condition or [his] present situation." When father visited with the child,[2] he played with the child, but "refuse[d] to take upon himself any parenting responsibilities in the sessions." He admitted that he continues to smoke marijuana to cope with his situation. In addition, there was evidence that the child was thriving in foster care, although he still required "close attention to his medical needs." The circuit court found that the Department presented clear and convincing evidence that it was in the

---

[2] Father "disappeared" from visitations for approximately one month without any explanation.

child's best interests that father's parental rights be terminated pursuant to Code § 16.1-283(C)(2).[3] This appeal followed.

## ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." Martin v. Pittsylvania Cnty. Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted). When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan, 13 Va. App. at 128, 409 S.E.2d at 463.

Father argues that the circuit court erred in terminating his parental rights pursuant to Code § 16.1-283(C)(2), which states that a court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Father contends he worked to remedy substantially his situation. However, he asserts that when the Department changed the goal from return home to adoption in six months,[4] the Department acted prematurely and that he had "a short time for services."

> The twelve-month time limit established by Code § 16.1-283(C)(2) was designed to prevent an indeterminate state of foster care "drift" and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement. "This provision protects the family unit and attendant rights of both parents and child, while assuring resolution

---

[3] The circuit court also terminated mother's parental rights. She did not appeal the ruling.

[4] The Department removed the child on April 29, 2013, and filed a foster care plan with the goal of adoption on November 7, 2013.

of the parent/child relationship without interminable delay."
Lecky v. Reed, 20 Va. App. 306, 312, 456 S.E.2d 538, 540 (1995).
The legislation established a reasonably presumptive time frame of
twelve months for parents to receive rehabilitative services to
enable them to correct the conditions that led to foster care
placement. "The statute clearly contemplates that efforts to resolve
the 'conditions' relevant to termination are constrained by time."
Id. If the parent fails to substantially remedy those conditions
within twelve months the court may act to prevent the child from
lingering in foster care.

L.G. v. Amherst Cnty. Dep't of Soc. Servs., 41 Va. App. 51, 56-57, 581 S.E.2d 886, 889 (2003).

"The time limit does not, however, temporally restrict the trial court's consideration to events

that occurred between the parent and child only during that discrete twelve-month time period to

the exclusion of what may have occurred before and after those dates." Id. at 57, 581 S.E.2d at

889 (citing Roanoke City Dep't of Soc. Servs. v. Heide, 35 Va. App. 328, 337, 544 S.E.2d 890,

897 (2001)).

Contrary to father's arguments, the evidence proved that he did not substantially remedy

the conditions that led to or required continuation of foster care for the child. The circuit court

noted that while the child was in foster care, father failed to cooperate with the Department and

follow through with the recommended services. "The Department is not required 'to force its

services upon an unwilling or disinterested parent.'" Logan, 13 Va. App. at 130, 409 S.E.2d at

463-64 (quoting Barkey v. Commonwealth, 2 Va. App. 662, 670, 347 S.E.2d 188, 192 (1986)).

Father admitted that he only complied with the necessary assessments because he "has to." The

Department presented evidence that the social workers frequently had to wake up the parents for

meetings. Father explained that he missed several appointments because of a lack of

transportation, but the Department provided him with gas cards and rides. The circuit court

stated that father "evinced a near total lack of interest in the various means of improvement

available to him."

After discussing father's inability, or unwillingness, to follow through with the Department's requirements, the circuit court focused on the child's needs and the father's inability to care for those needs. "'[P]ast actions and relationships over a meaningful period serve as good indicators of what the future may be expected to hold.'" Linkous v. Kingery, 10 Va. App. 45, 56, 390 S.E.2d 188, 194 (1990) (quoting Frye v. Spotte, 4 Va. App. 530, 536, 359 S.E.2d 315, 319 (1987)). The circuit court noted, "At the time of placement, [the child's] health was so fragile a few hours of simple inattention could take him from full health to death. Neglect put [the child] into a coma for twelve days, which led to his placement." Although the child "had made significant improvements in foster care," he still requires "vigilant care." The circuit court found that "[t]he extent to which [mother and father] are disengaged shows they would not provide the close attention [the child] needs. Returning [the child] to a neglectful environment could undo the progress he has made, and poses a significant threat to his well-being."

Therefore, the evidence proved that father was not able to meet the child's needs before he entered foster care, and father did not improve his situation while the child was in foster care. Considering the record, the circuit court did not err in terminating father's parental rights pursuant to Code § 16.1-283(C)(2).

CONCLUSION

For the foregoing reasons, the circuit court's ruling is summarily affirmed. Rule 5A:27.

Affirmed.