COURT OF APPEALS OF VIRGINIA

Present: Judges Fulton, Ortiz and Lorish
Argued by videoconference

UNPUBLISHED

KARA FERGUSON

MEMORANDUM OPINION* BY
JUDGE LISA M. LORISH
MARCH 25, 2025

v.      Record No. 1242-24-1

CITY OF VIRGINIA BEACH
 DEPARTMENT OF HUMAN SERVICES

FROM THE CIRCUIT COURT OF THE CITY OF VIRGINIA BEACH
Kevin M. Duffan, Judge

> Ashton H. Pully, Jr. (Counseling & Litigation, PC, on brief), for
> appellant.
>
> (Mark D. Stiles, City Attorney; Christopher S. Boynton, Deputy City
> Attorney; Brad C. Hudgins, Associate City Attorney; Peter
> Imbrogno, Guardian ad litem for the minor child; Peter Imbrogno &
> Associates, P.C., on brief), for appellee.  Appellee and Guardian ad
> litem submitting on brief.

Kara Ferguson (mother) appeals the circuit court's order terminating her parental rights

under Code § 16.1-283(C)(2) and approving the foster care goal of adoption.  Mother argues that

the evidence was insufficient to terminate her parental rights and that adoption was not in the

best interests of the child.  She claims that the circuit court placed undue emphasis on her past

behavior and failed to consider her recent efforts and improvements.  We conclude that the

circuit court considered all the evidence presented, including mother's recent and admirable

efforts, so we affirm the court's conclusion that termination was appropriate under Code

§ 16.1-283(C)(2).  We also find that mother's other arguments are either defaulted or

unpersuasive.

---

* This opinion is not designated for publication.  *See* Code § 17.1-413(A).

BACKGROUND[1]

Mother and Chance Ferguson (father) had two children together, the younger of whom, S.F., is the subject of this appeal.[2] The City of Virginia Beach Department of Human Services ("the Department") first became involved with the family in 2021, before S.F. was born. The older child was injured during a domestic dispute between mother and her mother, S.F.'s maternal grandmother, and mother was ultimately arrested. The Virginia Beach Juvenile and Domestic Relations District Court (JDR court) found that the older child had been abused and neglected and entered a child protective order.[3] That order granted mother supervised visitations with the older child, but required her to cooperate with a substance abuse assessment, a domestic violence assessment, and random drug and alcohol screenings. The Department attempted to provide mother those services, but she could not participate because she was incarcerated.

In March 2022, while mother was seven months pregnant with S.F., she was arrested for driving under the influence after she totaled her vehicle. S.F. was born in May 2022 and diagnosed at birth with fetal exposure to alcohol, fetal alcohol spectrum disorder, in utero tobacco exposure, congenital laryngomalacia, growth disorder, and failure to thrive in an infant.

The JDR court entered a protective order, and S.F. was not permitted to leave the hospital with mother. Mother identified her friend, Shannon Flynn, as a prospective foster parent, and the

---

[1] "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Virginia State Bar*, 302 Va. 234, 240 n.2 (2023).

[2] Father signed a voluntary entrustment agreement in which he voluntarily terminated his parental rights as to the younger child.

[3] Mother and father's parental rights as to the older child have not been terminated, and he resides with paternal grandmother.

child entered Flynn's custody under a "fictive kinship foster care arrangement" in June 2022. Later in June 2022, mother was charged with assaulting her mother and was incarcerated until August. In August 2022, the Department transferred the child's custody to the Department to ensure she could receive necessary medical treatment through Medicaid, but the child remained in Flynn's care for eight months.[4] During that time, mother had a rocky relationship with Flynn and visited the child at the Department. In September of the same year, mother was arrested for another DUI and was incarcerated for 67 days. In the last two months of caring for the child, the Flynns started the process to become foster parents in order to obtain additional assistance to care for the child. But the Department placed the child with a new foster care placement in January 2023 to better meet the child's extensive medical treatment needs.

The Department identified various goals for mother that would be necessary for parental reunification: mother needed to demonstrate sobriety, maintain safe housing apart from the maternal grandmother, and have stable employment. The Department referred mother for a parental capacity evaluation, mental health counseling, and substance abuse counseling. The Department also referred mother to a domestic violence program and parenting classes.

While S.F. was in foster care, mother made some progress on the foster care goals. She began participating in the domestic violence program and substance abuse treatment and counseling. But mother was uncooperative at times; she sent the Department's case worker "many volatile texts and phone calls and emails throughout the duration of the case." She continued to test positive for alcohol and claimed that she was unaware that she needed to maintain her sobriety while S.F. was out of her care. Mother was ultimately "unsuccessfully

---

[4] According to Yolanda Murrell, the Child Protective Services in-home supervisor of mother's case, "Medicaid was an issue upon transition of custody to Mr. and Mrs. Flynn" because they had to "pay out of pocket for certain expenses" to treat the child's medical conditions.

discharged" from substance abuse treatment and the domestic violence program, due to her relapse and consumption of alcohol.

Despite the Department's assistance in finding her new housing, mother continued to reside with maternal grandmother. While mother lived with maternal grandmother, 911 was called from the residence more than ten times. On one occasion during S.F.'s time in foster care, maternal grandmother reported that mother "was threatening to kill her," and police found maternal grandmother "bleeding from her nose." On another occasion, mother called 911 and reported that maternal grandmother "unlawfully had her vehicle towed away."

The Department petitioned for termination of mother's parental rights in October 2023. After a hearing in November, the JDR court terminated mother's parental rights and entered a permanency planning order approving the foster care goal of adoption. At this point, S.F. had been in foster care for about 18 months. By the November 2023 hearing, mother claimed to have been sober for three months, but had neither established safe housing nor completed substance abuse treatment. Additionally, mother's license remained restricted, and she was driving without her ignition interlock installed. She did, however, graduate from domestic violence treatment. Mother appealed the JDR court's ruling to the circuit court.

Mother made further progress before the June 2024 hearing before the circuit court. She completed the alcohol abuse program in January 2024 and claimed to have been sober for ten months. Mother testified that she no longer lived with maternal grandmother, as she obtained new housing in March 2024, and had begun overnight visitations with her older child. She testified that, because of her abusive husband and debt, this was her first opportunity to find stable housing. Mother also said that she got a part-time job with Virginia Auto and Truck in fall 2023 and that she had a flexible schedule. Mother assured the court that her bills were covered, that she had "enough to support everybody," and that she planned to start cleaning houses for an

even more flexible schedule.  She had been visiting the child every week and believed that they had bonded, noting that S.F. "runs up to" her and was "hesitant to go back" to her foster family after her visits.  Mother was also going to therapy twice per month and testified that she was getting along with her own mother now that they had both quit drinking.  Mother received a restricted driver's license in May 2024, a month before the hearing, and obtained an ignition interlock.  Shannon Flynn, the child's previous kinship caretaker, testified that she would be available to help mother care for the child and that she had seen a big change in mother such that "she is a completely different person than she was a year ago."

S.F.'s foster mother testified that the child had come to them in February 2023 and was now doing well.  S.F. had become very active and gained weight.  The child also was receiving speech, physical, and occupational therapy, and had shown improvement.  She testified that "[e]ven though her speech is a little bit delayed, she understands everything that you're saying to her."  The foster mother had been in contact with mother, but the communication ceased in the summer 2023 when mother's text messages became "not very kind."  The foster mother also testified that mother and child "appear[] to get along."

The circuit court held that the Department had met its burden to terminate mother's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption.  In reviewing the history of the case, the circuit court noted that since the Department became involved, mother had been accused of domestic violence against grandmother and driving under the influence, had tested positive for alcohol use, and had not completed the required classes before the Department petitioned for termination of her parental rights.  The circuit court acknowledged that mother had made some progress after the Department changed the foster care plan for S.F. to adoption, noting that mother had moved out of the maternal grandmother's house, completed substance abuse treatment, and claimed to be committed to sobriety.  But the

circuit court concluded that it was in the best interests of the child to be in a stable home with parents who were not distracted from devoting themselves to her care.

Mother appeals.

ANALYSIS

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

I. The circuit court did not err in applying Code § 16.1-283(C)(2).

The circuit court terminated mother's parental rights under Code § 16.1-283(C)(2).[5] Code § 16.1-283(C)(2) permits a court to terminate parental rights if, by clear and convincing evidence, it finds that such termination is in the best interests of the child and that

> [t]he parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

"[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make

---

[5] Mother argues on appeal that the circuit court "misinterpret[ed]" the requirements of Code § 16.1-283(B), but that argument is meritless because the circuit court did not terminate her parental rights under that provision.

reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). "[S]ubsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which [s]he has been offered rehabilitation services." *Toms*, 46 Va. App. at 271. Regardless of the parent's progress, or lack thereof, a court may only terminate parental rights if it is in the best interests of the child. Code § 16.1-283(C); *Joyce*, 75 Va. App. at 701 (identifying as separate findings a court must make under the statute "that termination is in the child's best interest" and "that, without good cause, the parent failed to substantially remedy the conditions that led to, or required continuation of, the child's placement in foster care").

Subsection C does not, however, give a parent unlimited time to remedy the conditions that led to the child's removal. The statute sets 12 months as the longest amount of time that a parent has to "remedy substantially the conditions which led to or required" the child's removal—unless the parent has "good cause" requiring even more time. This cut-off "protects the family unit and attendant rights of both parents and child, while assuring resolution of the parent/child relationship without interminable delay." *Roanoke City Dep't of Soc. Servs. v. Heide*, 35 Va. App. 328, 337 (2001). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming . . . responsibilities." *Kaywood v. Halifax Cnty. Dep't of Social Servs.*, 10 Va. App. 535, 540 (1990).

With that said, a parent may show "good cause" for why it took longer to make necessary changes. For example, our Court affirmed a trial court's conclusion that a parent who was only 15 years old and had suffered sexual abuse had shown good cause to take longer than 12 months to remedy the conditions that led to the removal of the child. *L.G. v. Amherst Cnty. Dep't of Soc. Servs.*, 41 Va. App. 51, 59 (2003). Absent good cause to extend the time period to substantially

remedy the conditions leading to removal, a parent's progress, even if late, can be considered a reason why it is ultimately in the child's best interests not to sever all ties with a birth parent. *See, e.g.*, *Heide*, 35 Va. App. at 337 (affirming that a trial court "may determine that a parent's delayed, but nonetheless substantial, progress may overcome the time delay" affecting the best interests of the child).

Here, the circuit court did not find that mother had "good cause" for taking longer than a year to make required changes, and mother has not assigned error to any finding regarding her failure to show good cause. Instead, mother argues that the circuit court failed "to correctly assess whether the conditions leading to the child's foster care placement could be substantially remedied within a reasonable period of time, despite evidence of [mother's] ongoing efforts and progress." We find that the record fails to support this argument.[6]

Even before the child's birth, the Department offered services to mother, including substance abuse and domestic violence counseling. But mother continued to use alcohol, resulting in an arrest for DUI while she was pregnant with S.F.

S.F. was born in May 2022 and was immediately removed from mother's care. The Department petitioned for the termination of mother's parental rights in October 2023. By that point, mother had not completed substance abuse treatment and was instead "unsuccessfully discharged" due to her relapse and consumption of alcohol. Despite receiving ongoing services after the Department removed the child, mother was again accused of domestic violence against maternal grandmother and incurred a new DUI conviction in September 2022. The Department required mother to secure and maintain a safe home away from maternal grandmother, but mother had not done so by the time of the termination hearing before the JDR court. Mother had also not

---

[6] Mother also assigned error to the circuit court allowing the Department to create an "unfair bias" against her based upon her "perceived difficult nature," but later withdrew that assignment of error as "misstated."

yet been able to obtain a restricted driver's license. Based on this evidence, we cannot say the court erred in concluding that mother had failed "within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement." Code § 16.1-283(C)(2).

The court was also required, however, to assess whether the termination of mother's parental rights was in the best interests of the child. Here, mother contends that the circuit court erred by placing "undue emphasis" on her past conduct, thereby failing to consider her "recent" efforts, improvements, and circumstances at the time of the hearing. It is true that in evaluating whether to terminate parental rights under Code § 16.1-283(C)(2), "the factfinder may consider evidence before *or after* the [12]-month time period in order 'to evaluate the *present* best interests of the child.'" *Thach v. Arlington Cnty. Dep't of Hum. Servs.*, 63 Va. App. 157, 171 (2014) (first emphasis added) (quoting *L.G.*, 41 Va. App. at 56). That said, "[t]he [circuit] court may [also] discount the parent's current 'progress' if the best interests of the child would be served by termination." *Id.* (second alteration in original) (quoting *L.G.*, 41 Va. App. at 56).

By the time mother's appeal of the JDR court's decision terminating her parental rights reached the circuit court in June 2024, she had made some significant positive changes. She obtained housing that was no longer with the maternal grandmother. She completed a substance abuse program and represented to the court that she was sober for ten months. One month before the hearing, she obtained a restricted driver's license and ignition interlock. She also had part-time employment. With that said, the court carefully weighed the evidence of her recent progress, candidly acknowledging the positive efforts she had made, but found that termination of mother's rights was still in the best interests of a young child with numerous health conditions.

We hold that the circuit court's decision was not plainly wrong or without evidence to support it. S.F. had been in foster care essentially since birth, was 20 months old by the time mother obtained independent housing, and two years old at the time of the circuit court hearing. The Department had provided mother services since 2021, even before the child was born, but mother only started to make real progress in the months before the circuit court hearing. Due to mother's delay in obtaining services, the child remained in foster care, bonded with the foster family, and had shown significant improvement in her health and well-being. S.F. has complicated medical issues, requiring active treatment by six doctors, including a primary care physician, an ear, nose, and throat doctor, a developmental pediatrician, a developmental psychologist, a neurologist, and an endocrinologist. On average, she had two doctor's visits a month, and she was also in therapy twice a week and saw a separate speech therapist. Given the child's needs, and mother's history of issues with sobriety, the court concluded that stability with the foster family was in the child's best interests. Considering the totality of the evidence, the circuit court did not err in terminating mother's parental rights under Code § 16.1-283(C)(2).

We therefore affirm the circuit court's order terminating mother's parental rights and approving the foster care goal of adoption.

II. There was no jurisdictional defect in the proceedings below.

Mother argues that the circuit court had no jurisdiction to hold a hearing terminating her parental rights because Flynn was not properly provided notice of the petition to terminate mother's parental rights. Where the Department petitions for the termination of parental rights, a "summons shall be served upon the parent or parents and the other parties specified in [Code] § 16.1-263." Code § 16.1-283(A). "The summons or notice of hearing shall clearly state the consequences of a termination of residual parental rights." *Id.* Code § 16.1-263(A) states that

> [a]fter a petition has been filed, the court shall direct the issuance of
> summonses, one directed to the juvenile, if the juvenile is twelve or

- 10 -

more years of age, and another to at least one parent, guardian, legal custodian, or other person standing in loco parentis, and such other persons as appear to the court to be proper or necessary parties to the proceedings.

Mother acknowledges on brief that this issue was not raised below,[7] but "[t]he lack of subject matter jurisdiction can be initially raised at any point during the proceedings, including on appeal." *Pure Presbyterian Church of Wash. v. Grace of God Presbyterian Church*, 296 Va. 42, 50 (2018). Even if we assume for the sake of argument that failing to provide notice under Code § 16.1-283(A) would remove subject matter jurisdiction from the court below, there was no notice problem here. Flynn surrendered custody of the child to the Department in August 2022, although S.F. continued to live with Flynn until the beginning of January 2023. At that time, a new foster parent assumed custody, well before the Department petitioned to terminate mother's parental rights in October 2023. Flynn was not a parent, guardian, legal custodian, or other person standing in loco parentis to S.F. in October 2023, so no notice would have been required for the hearing before the JDR court. In any event, Flynn actually appeared at the termination hearing before the circuit court and testified on mother's behalf.

III. The other arguments raised on appeal are waived because they were not made below.

Mother raises several other arguments for the first time on appeal. She claims that the Department failed to provide reports of her progress to the circuit court and that the circuit court erred in admitting evidence of her past domestic abuse convictions. Mother also alleges that the

---

[7] Mother separately assigns error to the court's failure to "recognize that the Department of Human Services improperly removed the child" from kinship care with Flynn and "placed the child with an adoption-oriented foster family, thereby undermining the goal of reunification." But in asserting this error, mother points only to the notice requirements in Code § 16.1-263(A). Mother claims that Flynn, as a former custodian and someone formerly standing in loco parentis, should have received notice about the termination hearing. In this assignment of error, the notice issue is not raised as a matter of jurisdiction, and as it was not raised below, we cannot consider it here. Rule 5A:18 ("No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice.")

circuit court erred in considering father's entrustment agreement, thereby giving preference to a two-parent foster home, over her own as a single mother. Mother also argued that the circuit court erred in failing to consider the strong emotional bond between the child and her sibling, contrary to the best interests of the child.

"No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18. "The purpose of Rule 5A:18 is 'to ensure that the trial court and opposing party are given the opportunity to intelligently address, examine, and resolve issues in the trial court, thus avoiding unnecessary appeals.'" *Friedman v. Smith*, 68 Va. App. 529, 544 (2018) (quoting *Andrews v. Commonwealth*, 37 Va. App. 479, 493 (2002)). "Specificity and timeliness undergird the contemporaneous-objection rule[] [and] animate its highly practical purpose." *Bethea v. Commonwealth*, 297 Va. 730, 743 (2019). "Not just any objection will do. It must be both *specific* and *timely*—so that the trial judge would know the particular point being made in time to do something about it." *Id.* (quoting *Dickerson v. Commonwealth*, 58 Va. App. 351, 356 (2011)).

Because mother did not raise any of these arguments below, or present any evidence below about the strong emotional bond between the siblings, we cannot consider them on appeal. Mother has "not asked that we apply the 'good cause' or 'ends of justice' exceptions to Rule 5A:18, and we decline to do so *sua sponte*." *Wardell Orthopaedics, P.C. v. Colonna's Shipyard, Inc.*, 72 Va. App. 296, 303 (2020). These assignments are therefore waived, and we do not consider them.

Finally, mother argues that the circuit court erred when it failed to adequately consider evidence that she had completed all of the reunification requirements for the older child as of the

time of the hearing.  Yet, mother provides no argument for this claim in her brief.  We have often stated that "where a party fails to develop an argument in support of his or her contention or merely constructs a skeletal argument, the issue is waived." *Blankenship v. Commonwealth*, 71 Va. App. 608, 623 n.2 (2020) (quoting *Bartley v. Commonwealth*, 67 Va. App. 740, 746 (2017)); *see also* Rule 5A:20.  As a result, this argument is waived.[8]

### CONCLUSION

For all these reasons, the circuit court's judgment is affirmed.

*Affirmed.*

---

[8] Even so, we note that at oral argument, counsel for mother agreed that the best interests of the child analysis is child-specific and depended on the particular needs of each child as well as the nature of the parental-child relationship.  The circuit court was required, and did, consider the evidence presented to determine what outcome served the best interests of S.F.