COURT OF APPEALS OF VIRGINIA


Present:    Judges Frank, Clements and Senior Judge Willis
Argued at Alexandra, Virginia


STEPHANIE D. LONG AKERS
                                                            OPINION BY
v.        Record No. 0182-04-4                     JUDGE ROBERT P. FRANK
                                                        NOVEMBER 9, 2004
FAUQUIER COUNTY DEPARTMENT
 OF SOCIAL SERVICES


                FROM THE CIRCUIT COURT OF FAUQUIER COUNTY
                          Jeffrey W. Parker, Judge

           Glenn L. Clayton, II, for appellant.

           (Robert F. Beard, Social Services Staff Attorney; Joseph A.
           Vance, IV; Vance & Associates, on brief), for appellee.  Appellee
           submitting on brief.

           (Jud A. Fischel, Guardian *ad litem* for the infant child).  Guardian
           *ad litem* submitting on brief.


        Stephanie D. Long Akers, appellant, appeals the trial court's order terminating her

residual parental rights to her child H.A.L. under Code § 16.1-283(C).  She contends the trial

court erred (1) in finding that Fauquier County Department of Social Services provided

reasonable and appropriate efforts; (2) in finding appellant failed to maintain continuing contact

with H.A.L. and failed to provide a reunification plan; (3) in finding that appellant failed within a

reasonable time to substantially remedy the conditions that brought H.A.L. into foster care; (4) in

finding it was in the child's best interest to terminate parental rights; and (5) in relying on the

preference of a twelve-year-old child to terminate parental rights.  For the reasons stated, we

affirm the judgment of the trial court.

BACKGROUND

Appellant had a documented history of alcohol abuse and treatment since 1995, including occasions in 1995 and 1996 where the department of social services intervened and H.A.L. was placed with the maternal grandmother due to appellant's intoxication and resulting inability to care for H.A.L. H.A.L. was later returned to appellant's home.

On December 22, 1999, by emergency removal order, H.A.L. was placed in the custody of Fauquier County Department of Social Services. By order of December 27, 1999, the maternal grandmother, Helen Agnew, was given physical custody of H.A.L. Appellant was ordered to undergo a psychiatric evaluation and a substance abuse evaluation. The court found H.A.L. was abused and neglected.

Despite a number of letters written to appellant by Fauquier County Department of Social Services, appellant did not maintain regular contact with the department of social services. On February 11, 2000, appellant and the department of social services met to develop a foster care plan which included AA attendance, parenting skill classes, various evaluations and individual therapy.

The Fauquier County Department of Social Services' file contained twenty-one letters from January 2000 through March 2002 to appellant and her counsel, "trying to make referrals . . ., trying to make contact with her, trying to figure out her whereabouts because there were many periods of time during this process when we weren't aware of her whereabouts."

The Fauquier County Juvenile & Domestic Relations District Court approved the foster care plan by order of June 2, 2000. The order restricted contact between appellant and H.A.L., and continued the mental health evaluations. The goal was "return to parent."

On several occasions the supervised visitation was marred by "inappropriate" behavior by appellant. On July 13, 2000, appellant became "indignant" over the requirement of

supervised visitation and became "louder and louder," embarrassing the child. In September 2000, H.A.L. became "hysterical" after appellant accused the child of posing for nude photographs.

Fauquier County Department of Social Services lost contact with appellant for the months of September through November 2000. Appellant obtained a custody petition for H.A.L., but did not appear for the October 6, 2000 hearing date.

Supervised visitation ended in February 2001 when appellant stopped her visitation. Her whereabouts were unknown. Appellant had not completed any of the ordered evaluations but had attended counseling "sporadically" with Mary Beth Williams, a licensed clinical social worker.

Appellant was admitted into Dominion Hospital on March 4, 2001, "being on an alcohol binge for one week." She left the hospital the next day against medical advice.

By order of May 22, 2001, the Fauquier County Juvenile & Domestic Relations District Court changed the goal to "permanent foster care" and suspended any contact between appellant and H.A.L. The Foster Care Service Plan indicated appellant "has not stabilized her behaviors nor has she demonstrated that she can provide [H.A.L.] with a structured, stable environment constantly for any length of time."

After the change of goal to "permanent foster care," Fauquier County Department of Social Services' focus was to provide supportive services to appellant and the maternal grandmother.

Fauquier County Department of Social Services filed a Foster Care Review Plan dated April 22, 2002, which recommended a change of goal to "adoption." Fauquier County Department of Social Services reported:

> [H.A.L.] would be at serious risk for further abuse and neglect if she were returned to her mother's care. Ms. Long currently reports

that she has stopped drinking and has a stable home and stable job. However, Ms. Long's self report has always been unreliable. Ms. Long has never been able to maintain her sobriety consistently for any substantial period of time. She cycles back and forth between being sober, finding a job, and finding a place to live and excessive drinking which inevitably leads to losing her housing and her employment. All along when Ms. Long has reported that she is pulling herself together again, she gets a new attorney, a new therapist, and a new psychiatrist. By ending services with providers that have seen the effects of her alcoholism first hand and later starting services with new providers, Ms. Long can continue to deny that there has ever been a problem.

The plan, along with a petition to terminate appellant's parental rights, was filed and docketed for a hearing on May 23, 2002. After appellant was served with the petition, she relapsed and was hospitalized from May 24, 2002 to May 26, 2002 for in-patient detoxification.

Due to her intoxication, appellant did not attend the May 23, 2002 hearing, which was also the return date for a custody petition filed by appellant. Appellant did appear at the termination hearing on September 6, 2002. Appellant's parental rights were terminated by order of the Fauquier County Juvenile & Domestic Relations District Court on September 25, 2002. Appellant appealed, and a *de novo* termination hearing was scheduled in circuit court for July 30, 2003.

Again, appellant became intoxicated and was hospitalized from July 25 through July 28, 2003. Her BAC was .253 upon admission. However, she appeared at the termination hearing on July 30, 2003.

A number of mental health professionals testified at the circuit court termination hearing that H.A.L. does not want to return to appellant. They further opined that reunification would not be in the child's best interests.

Mary Beth Williams, appellant's therapist, treated appellant from the spring of 2000 through April of 2001. Williams described periods of sobriety and relapses. On April 14, 2000,

appellant came to Williams' office inebriated. Following this incident, Williams recommended appellant be hospitalized. She felt appellant needed "a lot more treatment."

Sharon D. Banks, H.A.L.'s foster care social worker, testified H.A.L. was presently in therapeutic foster care. The child had made substantial improvement. Banks indicated she was doing well in school, was very disciplined, and her earlier inappropriate behavior had ceased. Her foster mother confirmed H.A.L.'s progress.

Appellant entered the Comprehensive Addiction Treatment Services (CATS) outpatient relapse prevention program in April 2002. She successfully completed the program in January 2003. Jeanne Giles, a counselor in that program, testified that a relapse is part of recovery, but appellant has learned "ways to manage the trigger signs and stressors" that cause relapses. She indicated a relapse is not a sign of failure. Ms. Giles confirmed that appellant had been hospitalized for alcohol detoxification in March of 2001, May of 2002, June of 2002, and July of 2003.

Daniel Bowman, appellant's present therapist, indicated he began treating appellant in July of 2001. He testified appellant is now "very stable," with no signs of depression. He was aware of appellant's July 2003 hospitalization. He did not view this relapse as "failure."

William Zuckerman, a licensed clinical psychologist, characterized appellant as "highly motivated" to reunite with H.A.L. Despite a number of relapses, she has had "many, many, many days that she is trying very hard to work her program . . . ." She has shown motivation and has strengths as a parent. Dr. Zuckerman indicated appellant has stabilized herself "to some degree" and pointed to her new marriage as providing financial and emotional stability for appellant. He opined it would not be in the child's best interest to sever the relationship between appellant and H.A.L. Dr. Zuckerman, however, expressed concerns for appellant's parenting.

He did not suggest the child should be returned to appellant at the present time, nor could he rule out another relapse.

Cindy Horne, a caseworker with Fauquier County Department of Social Services, described appellant as "never able to maintain sobriety for any length of time or demonstrate that she could put her child's needs before her own or maintain a stable home environment." Ms. Horne said appellant was never able to achieve any of the service plan goals. Ms. Horne testified as to a number of incidents when appellant violated the court's "no contact" order of May 22, 2001. Appellant had attempted to send presents to H.A.L. There were a number of telephone calls initiated by appellant. These calls created an emotional setback for the child. Horne admitted that after the goal was changed to permanent foster care, the agency did not provide additional services to appellant.

Appellant testified as to twelve months of sobriety until her most recent relapse. Her life is now stable with a devoted husband. She indicated a number of stressors caused the relapse. She attended depositions of a witness who gave damaging testimony. She also referred to the death of her mother, H.A.L.'s birthday, and church activities as stressors. She testified her life is now in order and she has strong support systems in her husband, her AA sponsor, and her therapist.

H.A.L.'s counselor, Cicely Powell, a licensed clinical social worker, testified by deposition that she began therapy with H.A.L. in January of 2003. The counseling focused on H.A.L.'s "manipulating, lying, defying authority . . . ." H.A.L. has now made "considerable improvement in taking responsibility for her behaviors . . . ." Ms. Powell indicated H.A.L. has consistently expressed a desire not to return to her mother because her foster home provides "a family that loves and cares about her." Ms. Powell opined that there is no bond between appellant and H.A.L., nor does H.A.L. trust her mother. The therapist quoted H.A.L. as saying

- 6 -

appellant ruined her life because she wouldn't stay away from alcohol.  H.A.L. is now "flourishing under a very consistent parenting style . . . ."  Ms. Powell predicted potential harm if H.A.L. were reintroduced to appellant.

In an opinion letter terminating appellant's parental rights, the trial court reviewed appellant's history of alcoholism, her efforts at rehabilitations, and her relapses.  While the court found "tangible improvement" over the last twelve months, the latest relapse indicated that appellant still has not demonstrated her ability to provide for the emotional and physical needs of H.A.L.

## ANALYSIS

### I.

Appellant contends the Fauquier County Department of Social Services had an ongoing duty to provide services even after a plan for permanent foster case had been approved.  She maintains that social services must continue to render services to her up to and including the appeal hearing in the circuit court.  We disagree.

Code § 16.1-283 embodies "[t]he statutory scheme for the . . . termination of residual parental rights in this Commonwealth."  Rader v. Montgomery County Dep't of Social Servs., 5 Va. App. 523, 526, 365 S.E.2d 234, 235 (1988).  This "scheme provides detailed procedures designed to protect the rights of the parents and their child," id. at 526, 365 S.E.2d at 235-36, balancing their interests while seeking to preserve the family, Kaywood v. Halifax County Dep't of Social Servs., 10 Va. App. 535, 539, 394 S.E.2d 492, 494 (1990).  However, we have consistently held that "[t]he child's best interest is the paramount concern."  Wright v. Alexandria Div. of Social Servs., 16 Va. App. 821, 827, 433 S.E.2d 500, 503 (1993).

Code § 16.1-283(C) further provides in relevant part:

> 2.  The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve

months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end. . . .

"The twelve-month time limit . . . was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by the courts and social services in addressing the circumstances that resulted in the foster care placement." L.G. v. Amherst County DSS, 41 Va. App. 51, 56, 581 S.E.2d 886, 889 (2003). Within this "reasonable period" time frame, the various supportive and rehabilitative agencies must use "reasonable and appropriate efforts" to assist the parent in remedying those conditions. Code § 16.1-283(C)(2). "If the parent fails to substantially remedy those conditions within twelve months the court may act to prevent the child from lingering in foster care." L.G., 41 Va. App. at 57, 581 S.E.2d at 889.

However, this statutory mandate is not open-ended. As we said in Lecky v. Reed, 20 Va. App. 306, 312, 456 S.E.2d 538, 540 (1995):

> The statute clearly contemplates that efforts to resolve the "conditions" relevant to termination are constrained by time. Code § 16.1-283(C)(2). Absent "good cause," a parent or parents receiving the "reasonable and appropriate" services of "rehabilitative agencies" must "remedy substantially" the "conditions which led to . . . foster care" of the child in a "reasonable period not to exceed twelve months." Id. This provision protects the family unit and attendant rights of both parents and child, while assuring resolution of the parent/child relationship without interminable delay. "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming . . . responsibilities." Kaywood, 10 Va. App. at 540, 394 S.E.2d at 495.

The statutory language is precise, and the statutory scheme is well delineated. Under basic rules of statutory construction, we examine a statute in its entirety, rather than by isolating particular words or phrases. Earley v. Landsidle, 257 Va. 365, 369, 514 S.E.2d 153, 155 (1999).

- 8 -

When the language in a statute is clear and unambiguous, we are bound by the plain meaning of that language. Cummings v. Fulghum, 261 Va. 73, 77, 540 S.E.2d 494, 496 (2001).

Appellant cites Roanoke City Dept. of Soc. Servs. v. Heide, 35 Va. App. 328, 544 S.E.2d 890 (2001), to support her argument. Yet, Heide does not require departments of social services to provide "reasonable and appropriate" services through the date of the termination appeal hearing. Heide does not even address services provided by departments of social services. Instead, it addresses the time frame in which the "best interests of the child" should be evaluated.

As previously discussed, Code § 16.1-283(C) provides a two-prong requirement to terminate parental rights: (1) termination is in the best interests of the child, and (2) the parent has been unwilling or unable to remedy substantially the conditions that brought the child into foster care or that the parent failed to maintain continuing contact under Code § 16.1-283(C)(1).

Heide only addressed the first prong, i.e., the best interests of the child. In Heide, the father was unsuccessful in completing a number of alcohol rehabilitation programs and did not follow through with the services recommended by the department of social services. The uncontested facts of Heide disclose that only after the goal was changed to adoption did the father become serious in treatment, complete various programs, become employed and remain sober. "[T]he focus shifted from family reunification to a focus on placement for adoption." Id. at 333, 544 S.E.2d at 892.

Despite Heide's progress, the department of social services declined to investigate his reformation "because it no longer provided services to him." Id. at 334, 544 S.E.2d at 892. The department of social services argued Code § 16.1-283(C)(2) mandates a "twelve month cut-off beyond which a parent's efforts to remedy the conditions are not relevant." Id. at 335, 544 S.E.2d at 893. We disagreed, finding that a parent's post-petition efforts to remedy the

conditions may be considered by the trial court in determining whether termination is in the best interests of the child.

We concluded:

> In this case, DSS's construction of the statute would deny the fact finder the opportunity to evaluate the present best interests of the child. The trial court may discount the parent's current "progress" if the best interests of the child would be served by termination. However, as in the instant case, the trial court may determine that a parent's delayed, but nonetheless substantial, progress may overcome the time delay. We will not deprive the trial court of the opportunity to weigh the rights of the parents and the best interests of the child.

Id. at 337, 544 S.E.2d at 894. Heide clearly opines that a parent, despite a goal of adoption, may, on his or her own initiative, seek help and remedy the conditions that brought the child into foster care. The best interests of the child are to be determined at the time of the termination hearing.

In our subsequent decision in L.G., 41 Va. App. 51, 581 S.E.2d 886, we found that the trial court did not consider the mother's efforts of rehabilitation after the twelve-month period had expired. We reversed, holding

> had the trial court considered this evidence it may well have concluded either that (1) good cause existed for L.G.'s not having corrected the conditions within the statutory twelve-month time period, and/or (2) that termination was no longer in the best interests of K. or L.G. because L.G. had substantially remedied many of the conditions that led to the foster care placement.

Id. at 59, 581 S.E.2d at 890. We remanded for the trial court "to consider [the mother's] progress, not only during the twenty-one-month period prior to the August 2002 trial court [termination] hearing but also through the time of the remand hearing." Id.

It is uncontested that after May 22, 2001, the date of the order for permanent foster care, Fauquier County Department of Social Services provided no further services for appellant. Appellant does not question the services prior to the change in goal. Appellant offers a number of

consequences that she argues flowed from the department of social services' failure to provide post-petition services. She claims the failure hindered her efforts to comply with the existing order, inhibited her efforts to prepare for trial, and impaired her efforts to reunite with her child because visitation was terminated.

The facts belie these arguments. Appellant could have and did continue in alcohol counseling. At trial she produced testimony concerning her efforts of sobriety and the stability of her life. The issue before the trial court was appellant's sobriety and whether her recent efforts were sufficient. Appellant, as did Mr. Heide, offered evidence to show it was not in the child's best interest to terminate her parental rights.

Appellant further contends that the cessation of efforts by Fauquier County Department of Social Services hindered her efforts to plan a reunification with the child and hindered her efforts to comply with the existing court orders. One of the statutory bases for termination is Code § 16.1-283(C)(1) which authorizes termination upon a finding that:

> The parent or parents have, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement in foster care notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to communicate with the parent or parents and to strengthen the parent-child relationship. Proof that the parent or parents have failed without good cause to communicate on a continuing and planned basis with the child for a period of six months shall constitute prima facie evidence of this condition.

Essentially, appellant argues that with the cessation of visitation and other services, she was unable to "maintain continuing contact with and to provide or substantially plan for the future of the child . . . ." Code § 16.1-283(C)(1). Again, this argument ignores the time limitation set forth in that subsection. As we discussed above, there is a finite time frame for both subsections (C)(1) and (C)(2). Any potential handicaps created by the clear statutory scheme are matters of policy, the sole province of the legislature, not the judiciary. See Wood v.

- 11 -

Board of Supervisors of Halifax Cty., 236 Va. 104, 115, 372 S.E.2d 611, 618 (1988) ("[I]t is the responsibility of the legislature, not the judiciary, to formulate public policy, to strike the appropriate balance between competing interests, and to devise standards for implementation."). "Once the legislature has acted, the role of the judiciary 'is the narrow one of determining what [the legislature] meant by the words it used in the statute.'" Dionne v. Southeast Foam Converting & Packaging, 240 Va. 297, 304, 397 S.E.2d 110, 114 (1990) (quoting Diamond v. Chakrabarty, 447 U.S. 303, 318 (1980)). "[T]he contentions now pressed on us should be addressed to the political branches of the Government . . . and not to the courts." Chakrabarty, 447 U.S. at 317.

Appellant maintains an additional consequence of the cessation of services is that the burden of proof shifted to her to prove she had substantially complied with the conditions that led to foster care placement. She reasons that because Fauquier County Department of Social Services no longer offered services, she must prove she had prepared a reunification plan and that she had substantially remedied the conditions. The record does not support this position.

Clearly, the burden is on the Fauquier County Department of Social Services to prove the requirements of Code § 16.1-283(C)(1) and (2) by clear and convincing evidence. Ange v. York/Poquoson DSS, 37 Va. App. 615, 630, 560 S.E.2d 474, 481 (2002). The trial court, in its opinion letter of August 18, 2003, found the department met its burden of proof as to both Code § 16.1-283(C)(1) and (2). Nothing suggests any burden was shifted from Fauquier County Department of Social Services to appellant.

Thus, we conclude the trial court did not err in ruling Fauquier County Department of Social Services did not have to afford appellant services after the goal was changed to adoption.

II.

Appellant contends that the Fauquier County Department of Social Services did not, by clear and convincing evidence, prove that she failed to maintain continued contact with and to provide or substantially plan for the future of the child under Code § 16.1-283(C)(1) and that she had been unwilling or unable to remedy substantially the conditions which led to the child's foster care placement under Code § 16.1-283(C)(2).

In Logan v. Fairfax County Dept. of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 463 (1991), we stated:

> When addressing matters concerning a child, including the termination of a parent's residual parental rights, the paramount consideration of a trial court is the child's best interests. See Toombs v. Lynchburg Div. of Soc. Servs., 223 Va. 225, 230, 288 S.E.2d 405, 407-08 (1982); Farley v. Farley, 9 Va. App. 326, 329, 387 S.E.2d 794, 796 (1990). On review, "[a] trial court is presumed to have thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." Farley, 9 Va. App. at 329, 387 S.E.2d at 796 (citing Brown v. Brown, 218 Va. 196, 200, 237 S.E.2d 89, 92 (1977)). Furthermore, the evidence is viewed in the light most favorable to the prevailing party below and its evidence is afforded all reasonable inferences fairly deducible therefrom. Farley, 9 Va. App. at 328, 387 S.E.2d at 795. "In matters of a child's welfare, trial courts are vested with broad discretion in making the decisions necessary to guard and to foster a child's best interests." Id.; accord Eichelberger v. Eichelberger, 2 Va. App. 409, 412, 345 S.E.2d 10, 11 (1986). The trial court's judgment, "when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it." Peple v. Peple, 5 Va. App. 414, 422, 364 S.E.2d 232, 237 (1988).

The trial court must determine under (C)(1) whether the evidence establishes: (1) that termination is in the best interests of the child; and (2) that the parents, without good cause, failed to maintain continuing contact with and to provide or substantially plan for the future of the child for a period of six months after the child's placement. Under Code § 16.1-283(C)(2), a court must determine whether the evidence establishes: (1) that termination is in the best

interests of the children; and (2) that the conditions, which resulted in the foster care placement, have not been remedied within twelve months from placement.

Here, the evidence supports the trial court's findings. The evidence showed appellant had a longstanding fight with alcoholism. H.A.L. was placed in foster care in December of 1999, at age eight. The six-month time period provided by Code § 16.1-283(C)(1) within which the parent is expected to "maintain continuing contact with and to provide or substantially plan for the future of the child" elapsed in June of 2000. The twelve-month time period of Code § 16.1-283(C)(2) elapsed in late December of 2000. For the first two months of 2000, appellant did not maintain regular contact with Fauquier County Department of Social Services. During supervised visitation, appellant on several occasions became abusive. On one occasion, she accused H.A.L. of posing for nude photographs and H.A.L. became hysterical. Fauquier County Department of Social Services lost contact with appellant from September through November of 2000.

In February 2001, it was reported appellant had not completed any of the ordered evaluations but had sporadically attended counseling with Mary Beth Williams. The foster care plan filed in March 2001 indicated appellant had neither stabilized her behavior nor demonstrated that she can provide H.A.L. with a structured, stable environment for any length of time. In April 2001, appellant appeared at her counselor's office in an inebriated state. Appellant had substantial relapses requiring hospitalization for detoxification in March of 2001, May of 2002, June of 2002, and July of 2003.

A foster care plan dated April 22, 2002, approved by the court by order entered May 22, 2002, reported H.A.L. would be at "serious risk for further abuse and neglect" if returned to appellant. A number of mental health professionals also testified it would not be in H.A.L.'s best interest to reunite with appellant. Other testimony revealed that there was no emotional bond

- 14 -

between H.A.L. and appellant. H.A.L., who told a number of social workers and counselors she did not want to return to her mother, indicated her life was ruined because of her mother's alcoholism.

H.A.L. has been flourishing in her present foster home. She had attained stability in her life. Her behavior of "manipulating, lying, defying authority" has ceased. She is now taking responsibility for her behavior.

Appellant testified as to her desire to have H.A.L. returned to her, her progress in therapy and the stability of her present life. She indicated she maintained sobriety for twelve months prior to a relapse in July of 2003, only several weeks before the termination hearing in circuit court.

Daniel Brown, appellant's current therapist, testified appellant is "very stable." Dr. Zuckerman indicated appellant was "highly motivated" and has strengths as a parent. He opined it would not be in the child's best interest to sever appellant's relationship with H.A.L.

The trial court discounted this testimony and resolved the conflict in the evidence in favor of the Fauquier County Department of Social Services. The credibility of witnesses and the weight to be accorded their testimony is a matter within the sole province of the finder of fact. Courembis v. Courembis, 43 Va. App. 18, 36, 595 S.E.2d 505, 514 (2004).

From the evidence presented, the trial court did not err in finding that the requirements of Code § 16.1-382(C)(1) and (2) were proved.

III.

Appellant argues the trial court abused its discretion by relying on the preference of the twelve-year-old child in deciding to terminate appellant's parental rights. Appellant refers to Code § 16.1-283(G) which provides termination shall not be granted "if it is established that the child, if he is fourteen years of age or older or otherwise of an age of discretion as determined by

- 15 -

the court, objects to such termination." This statute gives a child who is subject to a termination proceeding a "veto right" if the child is fourteen years or older or has reached an age of discretion. This statute does not apply here.

Appellant cites Deahl v. Winchester Dept. of Soc. Servs., 224 Va. 664, 299 S.E.2d 863 (1983), and Hawks v. Dinwiddie Dept. of Soc. Servs., 25 Va. App. 247, 487 S.E.2d 285 (1997), to support her position. Both cases address the trial court's duty to determine if a child, subject to a termination proceeding, under the age of fourteen has reached the age of discretion to "veto" termination under Code § 16.1-283(G). These cases are not relevant to our inquiry. The provisions of Code § 16.1-283(G) simply do not apply when a child cannot legally "veto" termination.

The fact that the trial court made no finding that the child had reached the age of discretion is of no moment. Code § 16.1-283(G) does not establish the standard for admitting a child's testimony.

The proper standard is whether the child is competent.[1] As the Supreme Court said in Cross v. Commonwealth, 195 Va. 62, 64, 77 S.E.2d 447, 449 (1953):

> There is no specific age at which a child must have arrived in order to be competent as a witness. A child is competent to testify if it possesses the capacity to observe events, to recollect and communicate them, and has the ability to understand questions and to frame and make intelligent answers, with a consciousness of the duty to speak the truth. Wigmore on Evidence, 3d ed., Infancy, sec. 506, p. 596; 5 Jones Commentaries on Evidence, 2d Ed., Competency of Witnesses, sec. 2106, p. 3953; 70 C. J., Witnesses, secs. 121, 122, pp. 91-94.

Nevertheless, the trial court did not base its decision solely on the child's stated wishes. In the context of the trial court's opinion letter, it was not the determinative factor. The trial

---

[1]Appellant does not contend on appeal that the child was incompetent to testify. Code § 8.01-396.1 states that no child shall be incompetent to testify solely because of age.

court methodically traced appellant's alcohol addiction, the efforts of rehabilitation and the child's history of neglect. The court characterized appellant's history as having a "yo yo" effect on the child. The court further noted appellant's history of progress in treatment and relapses, the most recent relapse five days before the termination hearing.

The trial court then concluded:

> This Court cannot take a chance that future stressors could cause a repeat of such behavior and lead to the same type of experiences for [the child] that were so common in the past. This child has suffered enough. She appears to be healthy and thriving in her present environment. To force her back with her mother against her wishes at the age of 12, when the mother has so recently repeated her past indiscretions would be an irresponsible action on the part of the Court. Mrs. Akers has had sufficient opportunities to rehabilitate and repair the damage done to her relationship with her daughter. The Court cannot wait forever to determine if Mrs. Akers can become responsible enough to resume her parental duties. <u>Kaywood v. Halifax County Dept. of Soc. Servs.</u>, 10 Va. App. 535 (1990).

We conclude that the trial court did not err in considering the child's preference.

<u>CONCLUSION</u>

For the foregoing reasons, we affirm the decision of the trial court terminating appellant's parental rights.

<u>Affirmed.</u>