COURT OF APPEALS OF VIRGINIA


Present:    Judges Elder, Clements and Senior Judge Annunziata


TRYSHA L. GRAVES

MEMORANDUM OPINION[*]

v.        Record No. 1210-08-2                        PER CURIAM
                                                        OCTOBER 21, 2008

PETERSBURG DEPARTMENT
  OF SOCIAL SERVICES


FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Pamela S. Baskervill, Judge

(Katina C. Whitfield, on brief), for appellant.  Appellant submitting
on brief.

(Joan M. O'Donnell; Sharon A. Baptiste, Guardian *ad litem* for the
minor children, on brief), for appellee.  Appellee and Guardian *ad
litem* submitting on brief.


        Trysha L. Graves (mother) appeals a decision of the circuit court terminating her residual

parental rights to her three minor children, T.G., T.M., and L.M.  The sole question raised by

mother on appeal is whether the circuit court erred in finding by clear and convincing evidence that

it is in the best interests of T.G., T.M., and L.M. to terminate mother's residual parental rights.

Finding no error, we affirm. [1]

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

[1] The circuit court terminated mother's residual parental rights relying upon Code
§ 16.1-283(B)(1), (B)(2), (B)(2)(b), (B)(2)(c), and (C)(2).  In doing so, the circuit court
specifically found, among other findings, with respect to each child that "it is in the best interests
of the child to terminate mother's residual parental rights in order to provide the child with a
permanent and safe placement."  The code sections relied upon by the circuit court in terminating
mother's residual parental rights have specific separately delineated elements, which the
Petersburg Department of Social Services (DSS) was required to prove in order to support
termination of mother's parental rights.  However, on appeal, mother does not challenge any of
the circuit court's findings with respect to each of the specific elements contained in those code
sections, other than the "best interests" element, which is a threshold test common to both

<u>Background</u>

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. <u>See</u> <u>Logan v. Fairfax County Dep't of Human Dev.</u>, 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).[2]

So viewed, the evidence proved that at the time of the termination hearing in the trial court, T.G. was seven and one-half years old, T.M. was four and one-half years old, and L.M. was two and one-half years old.[3]

In September 2005, at the time of L.M.'s birth, he and mother tested positive for cocaine and marijuana. As a result, mother was referred to Project Link, a substance abuse treatment program, through the District 19 Community Services Board (District 19).

In March 2006, District 19 notified DSS that mother had been non-compliant with treatment and continued to use cocaine and marijuana. As a result, DSS filed petitions alleging abuse and neglect with respect to T.G., T.M., and L.M. Mother tested positive for cocaine on March 13 and 22, 2006. On March 22, 2006, the J & DR court entered child protective orders for each child.

---

subsections (B) and (C) of Code § 16.1-283. Accordingly, mother's sole argument on appeal is that DSS failed to prove by clear and convincing evidence that termination of her parental rights is in the "best interests" of her minor children. Thus, the "best interests" finding made by the circuit court with respect to each child is the only finding we will address on appeal.

[2] There is no transcript of the circuit court hearing in this case. Rather, the proceedings are reflected in the written statement of facts, which indicates that the parties agreed that the pleadings and orders from the Petersburg Juvenile and Domestic Relations District Court ("the J & DR court") were an accurate reflection of the proceedings in that court and were admissible as evidence in these proceedings. Accordingly, we have considered the written statement of facts, as well as the content of the pleadings and orders from the J & DR court, in reciting the facts of this case.

[3] Mother's three children each had a different father. Mother was not married to or living with any of those men at the time of the proceedings in this case. A separate termination petition had been filed with respect to T.G.'s father, and the J & DR court had granted a separate termination petition with respect to T.M.'s father.

- 2 -

Thereafter, on April 13, April 28, May 10, May 17, and May 18, 2006, mother tested positive for cocaine.

On or about May 19, 2006, the J & DR court entered preliminary removal orders placing T.G., T.M., and L.M. in the temporary custody of DSS. DSS placed T.G. in the home of a paternal aunt. T.M. was permitted to remain in the home of his paternal grandmother, with whom he had been living. DSS placed L.M. in a foster care home. At that time, DSS was concerned about mother's housing; she was living in motel rooms.

On or about May 31, 2006, the J & DR court found that mother's continued use of illegal substances seriously impaired her parental ability and placed her three minor children at risk of imminent harm. On or about July 26, 2006, the J & DR court approved the initial foster care service plan for T.M. with the goal of returning him to mother.[4] On that same date, the J & DR court granted a petition for custody of L.M. filed by mother's friend. On or about October 18, 2006, the J & DR court granted the petition for custody of T.G. filed by the paternal aunt.

Nora Vassar, a DSS social worker, testified that during the six-month period after July 2006, after the J & DR court transferred legal custody of T.G. to a relative, L.M. to mother's friend, and approved the initial foster care service plan for T.M, mother did little to comply with the foster care service plan. She continued to use illegal substances, did not comply with treatment, and failed to maintain stable housing or employment.

However, beginning in January 2007, mother tested negative for illegal substances and participated in substance abuse treatment on a regular basis. She obtained employment, and DSS assisted her with housing. In January and June 2007, the J & DR court reviewed the initial foster care service plan with respect to T.M. Beginning in June 2007, mother began overnight visits with

---

[4] For reasons unrelated to mother, the J & DR court denied the custody petition filed by the paternal grandmother, and removed T.M. from grandmother's home in November 2006. At that time, DSS placed T.M. in a foster care home.

T.M.  In August 2007, DSS placed T.M. in mother's home on a trial basis.  According to Vassar, sometime during the summer of 2007, T.G. and L.M. were also returned to mother's care.  Mother filed motions to amend the orders transferring custody, and, without DSS's participation or knowledge, the J & DR court granted such motions.  The J & DR court ordered mother to continue with substance abuse treatment and abstain from the use of illegal drugs.

In October 2007, District 19 reported to DSS that mother had missed several substance abuse treatment sessions and had tested positive for marijuana since August 2007.  DSS investigated, and found mother tested positive for marijuana with all three children in her care.  DSS removed the children from mother's care.  At that point, DSS still had legal custody of T.M.  On or about October 24, 2007, DSS filed petitions alleging abuse and neglect of T.G. and L.M.  DSS returned T.G. to the paternal aunt and placed L.M. in a foster care home with T.M.  On or about October 31, 2007, the J & DR court again found T.G. and L.M. were abused and/or neglected while in mother's care and entered preliminary removal orrders with respect to those two children.

In November 2007, DSS filed a petition for permanency planning hearing with respect to T.M., recommending the goal of adoption, along with a new foster care service plan.  DSS noted in that foster care service plan review, that mother had been unemployed since mid-August 2007, due to being hit by a car, but that hospital records showed she did not sustain major injuries from the incident and was released a few hours after it occurred.  DSS noted that mother maintained she was unable to work due to her injuries, and she had not secured employment as of November 2007.  DSS noted in its foster care service plan for T.M. filed November 14, 2007, that mother continued to test positive for marijuana since the removal of her children from her care in October 2007.  The J & DR court approved the new plan for T.M. on or about January 9, 2008.  With respect to T.G. and L.M., DSS filed new foster care service plans with the goal of adoption or placement with relatives, and the J & DR court approved those plans on or about January 9, 2008.

- 4 -

Mother appealed the dispositional orders with respect to T.G. and L.M. and the permanency planning order with respect to T.M. to the circuit court. After a trial *de novo* with respect to all three children, the circuit court sustained DSS's petitions and approved the foster care service plans with the goal of adoption for all three children. Thereafter, DSS filed petitions for the involuntary termination of mother's parental rights as to each child. On or about March 5, 2008, the J & DR court granted all three petitions. Mother timely appealed to the circuit court, and after a trial *de novo*, the circuit court sustained the petitions and terminated mother's residual parental rights to T.G., T.M., and L.M.

During the circuit court hearing, Vassar testified that T.G. was aware of mother's use of marijuana. Vassar, who testified as an expert witness, opined that mother's use of illegal drugs placed her children at risk of developmental delays and created insecurity due to instability in their daily care. Vassar opined that parents who use illegal substances provide poor supervision for their children. Vassar acknowledged that mother voluntarily returned to substance abuse treatment after the children were removed from her care the second time and that her drug screens were negative for illegal substances beginning in January 2007 through August 2007. Vassar stated that DSS allowed mother to visit with the children following their removal from her care in October 2007. Mother had a negative drug screen in January 2008, and had one visit. She then tested positive for marijuana and had no additional visits.

Vassar had observed mother during her visits with T.M., while he was in DSS custody, and found that mother treated T.M. in a loving and appropriate manner. Vassar could not comment on mother's relationship with the other two children while they were not in her custody, as she had not observed mother with them. Vassar stated that T.G. is very bright and is doing well in school, that T.M. has speech delay requiring therapy, and that L.M. has significant development delays requiring play therapy, speech therapy, and occupational therapy.

Larry Turner, a therapist employed by District 19, testified on behalf of mother. He acknowledged he wrote a letter dated February 21, 2008 to DSS, which indicated that mother's "case" with District 19 was closed. However, Turner stated that mother was reinstated within thirty days after February 21, 2008, and had attended two sessions and missed two sessions between that date and the date of the circuit court hearing, April 16, 2008. Turner testified that mother had good participation in the first session, was ill for the second session, admitted her use of illegal substances during the third session, and did not attend the fourth session due to personal matters. Turner stated that mother became more talkative during the three individual sessions she had with him, and he believed that mother was developing insight into the consequences of her illegal substance abuse. Upon cross-examination, Turner testified that use of illegal substances has a negative impact on one's ability to parent. Turner admitted mother had not been tested for illegal substances since her re-entry into the program in February 2008.

Mother testified that she was unemployed and looking for employment at the time of the circuit court hearing. She last worked at Family Dollar, but was laid off after a criminal background check. She had also worked at a supermarket, but stated that she was injured when a car crashed through the store's window. She stated she had been in her current apartment since May 31, 2007, but admitted that she faced the possibility of eviction because her rent was two and one-half months in arrears. Mother acknowledged that she has a substance abuse problem, but did not realize it was serious. She stated she is trying to do what is right, but on direct examination, she admitted she is not willing to participate in inpatient treatment because there would be no one to pay her bills and take care of her apartment. Upon cross-examination by the guardian *ad litem*, mother stated she was willing to think about inpatient treatment. Mother admitted she has not paid child support for any of her children. With respect to her plans for her three children, mother stated she planned to register T.M. for school, place L.M. on a waiting list for school, and enroll T.G. in after school

- 6 -

programs. Mother claimed she would be more positive with the children, enroll them in activities, and talk with them more.

The circuit court granted DSS's petitions, and terminated mother's residual parental rights to T.G., T.M, and L.M.

<u>Analysis</u>

> When reviewing a decision to terminate parental rights, we presume the circuit court "thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests." "The trial court's judgment, 'when based on evidence heard *ore tenus*, will not be disturbed on appeal unless plainly wrong or without evidence to support it.'" In its capacity as factfinder, therefore, the circuit court retains "broad discretion in making the decisions necessary to guard and to foster a child's best interests."

> \*   \*   \*   \*   \*   \*   \*

> Because "the rights of parents may not be lightly severed," clear and convincing evidence must establish the statutory grounds for termination. In the end, the "child's best interests" remain the "paramount consideration" of the court. Even on this issue, however, we cannot "substitute our judgment" for the circuit court's, but rather review the record only to determine if sufficient evidence supports it.

<u>Toms v. Hanover Dep't of Soc. Servs.</u>, 46 Va. App. 257, 265-66, 616 S.E.2d 765, 769-70 (2005) (citations omitted).

When deciding what is in a child's best interests, the circuit court considers many factors, including:

> the age and physical and mental condition of the . . . children, the age and physical and mental condition of the parents; the relationship existing between each parent and each child; the needs of the . . . children; the role which each parent has played, and will play in the future, in the upbringing and care of the . . . children, and such other [necessary] factors . . . .

<u>Richmond Dep't of Soc. Servs. v. Crawley</u>, 47 Va. App. 572, 579-80, 625 S.E.2d 670, 673-74 (2006). "The best interests of the child are to be determined at the time of the termination

hearing." Akers v. Fauquier County Dep't of Soc. Servs., 44 Va. App. 247, 259, 604 S.E.2d 737, 742 (2004).

On appeal, mother argues that notwithstanding the opinions of Vassar and Turner that use of illegal substances has an impact on a person's ability to parent, no evidence showed that her children were ever physically or mentally harmed while in her care or that T.M.'s and L.M.'s developmental delays were the result of her substance abuse. Thus, she argues that even viewing the evidence in the light most favorable to DSS, it failed to prove under a clear and convincing standard that it is in the best interests of T.G., T.M., and L.M. to terminate mother's parental rights. She asserts that her parental rights should not be terminated based upon a setback she suffered due to a string of unfortunate events, after eight months of progress and sobriety.

The evidence showed that since September 2005, substance abuse treatment, individual therapy, childcare, and assistance with housing had been available to mother. Yet, her three children were removed from her care in May 2006, due to her continuing use of illegal substances and her failure to comply with substance abuse treatment. Between May and December 2006, mother continued to use illegal substances and failed to comply with treatment. It was not until January 2007, after her children had been out of her care for approximately eight months, that mother began to abstain from the use of illegal substances, maintain stable housing and employment, and regularly visit her children. Although mother remedied the situation for a period of approximately eight months, shortly after her children were returned to her in the summer of 2007, she relapsed and began using illegal substances and failing to attend treatment sessions, despite receiving ongoing services. Mother's children were again removed from her care in October 2007. She tested positive for illegal drugs on more than one occasion after the children were removed from her care in October 2007, and she failed to participate in substance abuse treatment. District 19 closed mother's "case" on or about February 21, 2008.

At the time of the circuit court hearing, mother denied the severity of her substance abuse problem. In addition, while the record showed that mother had been unable to maintain long-term sobriety through outpatient substance abuse treatment, she expressed little to no interest in attending in-patient treatment to address her substance abuse problems. In addition, she was unemployed and two months in arrears on her rent, facing the possibility of eviction. While there was evidence she tested negative for illegal substances on one occasion in January 2008, she tested positive thereafter and had no further visits with her children. In addition, the evidence showed that between re-entry into the treatment program in February 2008 and April 2008, mother had missed two out of four treatment meetings, and she admitted her use of illegal substances on the date of one of those meetings. She had not been tested for illegal substances since re-entry into the treatment program in February 2008. Expert testimony established that illegal drug use has a negative impact on a person's ability to parent.

Due to mother's illegal drug use and failure to comply with services offered to her, her three children had been in her care for only a couple of months between May 2006 and the time of the circuit court hearing in April 2008, a period of almost two years. "The [termination] statute clearly contemplates that efforts to resolve the 'conditions' relevant to termination are constrained by time." Lecky v. Reed, 20 Va. App. 306, 312, 456 S.E.2d 538, 540 (1995). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

Thus, we conclude that this record contains sufficient evidence to support the circuit court's finding that DSS proved under a clear and convincing standard that termination of

mother's parental rights to T.G., T.M., and L.M. was in their best interests. Accordingly, we cannot say the circuit court's decision was plainly wrong or without evidence to support it.

For these reasons, we affirm the circuit court's decision.

<u>Affirmed.</u>