COURT OF APPEALS OF VIRGINIA


Present:   Judges Humphreys, Powell and Senior Judge Clements


CRYSTAL DONAHUE

MEMORANDUM OPINION[*]
v.      Record No. 0888-10-3                    PER CURIAM
                                                NOVEMBER 9, 2010
ROANOKE CITY DEPARTMENT
  OF SOCIAL SERVICES


          FROM THE CIRCUIT COURT OF THE CITY OF ROANOKE
                       Charles N. Dorsey, Judge

          (L. Brad Braford, on brief), for appellant.  Appellant submitting on
          brief.

          (William M. Hackforth, City Attorney; Heather P. Ferguson,
          Assistant City Attorney; Joseph F. Vannoy, Guardian *ad litem* for the
          minor child, on brief), for appellee.  Appellee and Guardian *ad
          litem* submitting on brief.


        Crystal Donahue (mother) appeals an order terminating her parental rights to her daughter,

A.D.  Mother argues that the trial court erred by finding that (1) there was sufficient evidence to

terminate her parental rights pursuant to Code § 16.1-283(B); (2) there was sufficient evidence to

terminate her parental rights pursuant to Code § 16.1-283(C); and (3) A.D. was not competent to

testify, or in the alternative that she was not fourteen years of age or of an age of discretion pursuant

to Code § 16.1-283(G).  Upon reviewing the record and briefs of the parties, we find no error, and

affirm the decision of the trial court.

---

[*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

BACKGROUND

We view the evidence in the light most favorable to the prevailing party below and grant to it all reasonable inferences fairly deducible therefrom. See Logan v. Fairfax County Dep't of Human Dev., 13 Va. App. 123, 128, 409 S.E.2d 460, 462 (1991).

The Department of Social Services (the Department) first became involved with mother and A.D. in December 2001. Mother hit A.D. on the back and bottom, grabbed her throat, and verbally abused her. Child protective services founded a Level 1 complaint for physical abuse/ neglect.

The Department started providing services to mother and A.D. The Department referred A.D. to outpatient counseling and psychiatric services. Mother received assistance with medication management, transportation, and ongoing home visits.

In 2002, the maternal grandmother, Joyce Craft, received custody of A.D.[1] The Department continued to provide services to mother and A.D.

In March 2005, the Department received a complaint that mother mentally abused A.D. Mother had supervised visitation with A.D. and was not behaving appropriately during these visitations. The mental health providers saw a connection between mother's visits and A.D.'s subsequent behavioral issues. The Department continued to provide numerous services to mother, including a psychological evaluation, anger management services, and counseling services. In 2006, she started therapeutic visitations and was incorporated into A.D.'s counseling sessions.

During this same time period, A.D.'s behaviors escalated. In June 2007, she started running away from her grandmother's home. She was hospitalized after she threw a knife at her uncle. When she was hospitalized, A.D. admitted that her fourteen-year-old cousin sexually

---

[1] Craft also took custody of A.D.'s half-sister, who is not involved in this appeal.

abused her.  Mother refused to believe that the cousin sexually abused A.D. and insisted A.D.'s father abused A.D.

In June 2008, A.D. ran away from her grandmother's house for several hours.  Craft did not know where A.D. was.  Subsequently, the Department filed a petition for an emergency removal order and obtained custody of A.D.  The Department filed an initial foster care service plan with a goal of return home.  The Department required mother to maintain stable housing and employment, complete a psychological evaluation and follow through with any recommendations, complete a substance abuse evaluation and comply with any recommendations, cooperate with random drug screens, complete parenting classes, participate in individual counseling, and attend and comply with supervised visitations.

Mother did not comply with the Department's requirements.  On November 10, 2009, the Department filed a petition to terminate mother's parental rights to A.D., and on December 2, 2009, the Roanoke City Juvenile and Domestic Relations District Court terminated her rights. Mother appealed to the trial court.  After hearing evidence and argument on February 19, 2010, the trial court terminated mother's parental rights to A.D. pursuant to Code § 16.1-283(B) and 16.1-283(C)(2).  The trial court entered an order on March 16, 2010, and mother timely appealed.

### ANALYSIS

"Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it."  Martin v. Pittsylvania County Dep't of Soc. Servs., 3 Va. App. 15, 20, 348 S.E.2d 13, 16 (1986) (citations omitted).

When considering termination of parental rights, "the paramount consideration of a trial court is the child's best interests." Logan., 13 Va. App. at 128, 409 S.E.2d at 463.

Termination pursuant to Code § 16.1-283(B)

Mother argues that the trial court erred in finding that there was sufficient evidence to terminate her parental rights to A.D. pursuant to Code § 16.1-283(B).

Code § 16.1-283(B) states a parent's parental rights may be terminated if:

> 1. The neglect or abuse suffered by such child presented a serious and substantial threat to his life, health or development; and
>
> 2. It is not reasonably likely that the conditions which resulted in such neglect or abuse can be substantially corrected or eliminated so as to allow the child's safe return to his parent or parents within a reasonable period of time. In making this determination, the court shall take into consideration the efforts made to rehabilitate the parent or parents by any public or private social, medical, mental health or other rehabilitative agencies prior to the child's initial placement in foster care.

"[S]ubsection B [of Code § 16.1-283] 'speaks prospectively' and requires the circuit court to make a judgment call on the parent's ability, following a finding of neglect or abuse, to substantially remedy the underlying problems." Toms v. Hanover Dep't of Soc. Servs., 46 Va. App. 257, 270-71, 616 S.E.2d 765, 772 (2005) (quoting City of Newport News Dep't of Soc. Servs. v. Winslow, 40 Va. App. 556, 562-63, 580 S.E.2d 463, 466 (2003)).

Mother had received several founded Level 1 complaints of abuse and neglect against A.D. In 2001, mother physically abused A.D., and in 2005, mother mentally abused A.D. In 2008, while in the care of her maternal grandmother, A.D. ran away from home and was gone for several hours.

A.D.'s behaviors escalated over the years. She had difficulties in school and at home. In 2008, she threw a knife at her uncle. She acted out sexually and displayed inappropriate behavior.

- 4 -

The Department provided numerous services to mother. Robert Lanahan, a licensed clinical psychologist, evaluated mother's parental capacity. He concluded that mother was "psychiatrically limited, cognitively limited" and she did not have the "capacity to understand her children's needs." Lanahan testified that mother's "psychological and cognitive limitations are such that they impede her ability to take care of the needs of anyone other than herself." He did not think that there were any available services or counseling to assist her in improving her parenting abilities.

A.D. suffered abuse and neglect, as evidenced by the founded CPS complaints and the testimony at trial. Despite the Department's involvement with mother and the services offered to her, mother was unable to substantially remedy the underlying problems. The evidence was sufficient to terminate mother's parental rights pursuant to Code § 16.1-283(B).

<u>Termination pursuant to Code § 16.1-283(C)(2)</u>

Mother argues that the trial court erred in finding that there was sufficient evidence to terminate her parental rights to A.D. pursuant to Code § 16.1-283(C)(2).

A court may terminate parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed twelve months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

Code § 16.1-283(c)(2).

> [S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes. Considerably more "retrospective in nature," subsection C requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which he has been offered rehabilitation services.

Toms, 46 Va. App. at 271, 616 S.E.2d at 772 (quoting Winslow, 40 Va. App. at 562-63, 580 S.E.2d at 466).

The Department offered mother numerous services, including counseling, parenting classes, substance abuse treatment, and supervised visitation. Mother started the psychological evaluation, but failed to complete the evaluation. She also did not participate in group therapy or individual counseling.[2] Mother did not complete the substance abuse assessment and cooperated with only one out of three drug screens offered. She completed the parenting classes and visited with A.D. regularly. However, some of her conversations with A.D. were inappropriate.

Mother did not maintain stable housing. In May 2009, she had her own apartment, but shortly thereafter she left the apartment because she did not feel safe. She spent several nights in her car, and then started living with a friend. Mother explained that her friend's house could not accommodate A.D., and they would have to build an addition on the home if A.D. were to live there.

The Department became involved with the family in 2001, and despite their services, mother was unable to parent A.D. without the Department's intervention. A.D. lived with her maternal grandmother for several years because mother was unable to care for A.D. At the time of the hearing, A.D. had been in foster care for approximately eighteen months.

"It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming his [or her] responsibilities." Kaywood v. Halifax County Dep't of Soc. Servs., 10 Va. App. 535, 540, 394 S.E.2d 492, 495 (1990).

---

[2] The Department made four counseling referrals to four different agencies from July 2009 through November 2009. Mother attended only two individual counseling appointments -- on November 23, 2009 and December 8, 2009.

The evidence was sufficient to prove that it was in the best interests of the child for mother's parental rights to be terminated pursuant to Code § 16.1-283(C)(2).

Testimony of child

Mother argues that the trial court erred in determining that A.D. was not competent to testify or of an age of discretion. At the time of the trial, A.D. was thirteen years old.

"Notwithstanding any other provisions of this section, residual parental rights shall not be terminated if it is established that the child, if he is fourteen years of age or older or otherwise of an age of discretion as determined by the court, objects to such termination." Code § 16.1-283(G).

"Code § 16.1-283(G) does not establish the standard for admitting a child's testimony. The proper standard is whether the child is competent." Akers v. Fauquier County Dep't of Soc. Servs., 44 Va. App. 247, 265, 604 S.E.2d 737, 745 (2004). "When determining whether a child is mature enough to have intelligent views and wishes on the subject, the trial court should consider all of the circumstances, including the 'capacity, information, intelligence, and judgment of the child.'" Hawks v. Dinwiddie Dep't of Soc. Servs., 25 Va. App. 247, 253, 487 S.E.2d 285, 288 (1997) (quoting Coffee v. Black, 82 Va. 567, 569-70 (1886)). "[T]he focus of the inquiry is whether the child, regardless of how old he or she may be, is mature enough to intelligently consider the circumstances and ramifications of the termination proceeding." Id. at 255, 487 S.E.2d at 289.

"In cases in which the testimony of a child younger than fourteen is sought, the determination of whether or not the child has reached an 'age of discretion' is committed to the sound discretion of the trial court." Id. at 253, 487 S.E.2d at 288 (citing Deahl v. Winchester Dep't of Soc. Servs., 224 Va. 664, 676, 299 S.E.2d 863, 869 (1983)).

Here, the trial court had the opportunity to see and hear A.D., and concluded that A.D. was not competent to testify, nor was she of an age of discretion pursuant to Code § 16.1-283(G). A.D. suffers from post-traumatic stress disorder, oppositional defiant disorder, and is a victim of sexual and physical abuse and neglect. In its final order, the trial court noted that A.D. "lacks problem solving skills, has low intelligence, has the moral age of a 5 or 6 year old, reads on a third grade level, has poor attention to detail, is impulsive, and fears for her own safety."

The evidence supports the trial court's ruling that A.D. was neither competent to testify nor of an age of discretion.

## CONCLUSION

For the foregoing reasons, the trial court's ruling is affirmed.

<u>Affirmed.</u>