COURT OF APPEALS OF VIRGINIA

Present: Judges AtLee, Athey and White

KATIE BAKER

v.      Record No. 1228-24-3

HARRISONBURG ROCKINGHAM
 SOCIAL SERVICES DISTRICT

MEMORANDUM OPINION[*]
PER CURIAM
FEBRUARY 4, 2025

FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Bruce D. Albertson, Judge

(Katie Baker, on briefs), *pro se*.

(Sheila K. Paladino, Deputy County Attorney; Lynn C. Svonavec,
Guardian ad litem for the minor children; Office of the County
Attorney for Rockingham County, on brief), for appellee.[1]  Appellee
and Guardian ad litem submitting on brief.


Katie Baker ("Baker"), *pro se*, appeals the order of the Circuit Court of Rockingham County

("circuit court") terminating her parental rights pursuant to Code § 16.1-283(C)(2) and approving a

changed foster care goal of adoption.  On appeal, Baker contends that she received ineffective

assistance of counsel during the termination proceedings and that the termination of her parental

rights was not in the best interest of her children.  For the following reasons, we affirm.[2]

---

[*] This opinion is not designated for publication.  *See* Code § 17.1-413(A).

[1] Ms. Svonavec has requested to withdraw in this matter, citing the anticipated winding
up of her law practice on February 28, 2025.  This Court will address this motion by separate
order.

[2] After examining the briefs and record in this case, the panel unanimously holds that oral
argument is unnecessary because "the appeal is wholly without merit."  Code § 17.1-403(ii)(a);
Rule 5A:27(a).

## I. BACKGROUND[3]

Baker is the mother of three children identified herein as G.B.,[4] A.B., and M.B. The Harrisonburg Rockingham Social Services District ("HRSSD") first became involved with Baker and her minor children in 2015 due to reports concerning Baker's substance abuse, mental health, and corresponding domestic violence. As a result, HRSSD developed a safety plan for Baker and her children, which initially required supervised contact between Baker and the children. From March of 2015 to August of 2015, HRSSD also offered Baker housing and therapeutic services, however, Baker was "unable to consistently hold a job and [was] extremely resistant to obtaining services for [her] substance abuse."

By September of 2016, after the children were returned to Baker, HRSSD began receiving reports that the children were "filthy" and that police had responded twice to her residence for "verbal disputes," which Baker denied. In October, HRSSD received a report that Baker had posted a photo on social media, showing G.B.'s wrists and forehead duct-taped to a chair. When questioned concerning the social media post, Baker claimed G.B. had "asked them to do it and thought it was funny." As a result, HRSSD referred Baker again for services to address her instability and potential domestic violence. She refused the services.

On two separate occasions in 2019, the Harrisonburg Rockingham County Juvenile and Domestic Relations District Court (the "JDR court") adjudicated the children abused or neglected based on Baker's drug abuse, poor supervision of the children, and allegations of domestic abuse.

---

[3] "On appeal, 'we view the evidence and all reasonable inferences in the light most favorable to the prevailing party below, in this case the Department.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 695 (2022) (quoting *Farrell v. Warren Cnty. Dep't of Soc. Servs.*, 59 Va. App. 375, 386 (2012)). "To the extent that this opinion discusses facts found in sealed documents in the record, we unseal only those facts." *Brown v. Va. State Bar*, 302 Va. 234, 240 n.2 (2023).

[4] We use initials to protect the minor children's identities.

In May of 2020, the JDR court entered child protective orders on behalf of the children against both parents, requiring both parents to cooperate with substance abuse treatment, submit to regular drug screenings, and abstain from drug and alcohol use. HRSSD also referred Baker for additional mental health services and assisted her financially to secure housing. HRSSD even provided her with a parent mentor.

In February of 2021, HRSSD offered Baker additional services to address chronic truancy reports regarding her children. Baker again declined HRSSD's offer for additional services. During this period, Baker reported that she was unemployed and relying on TANF benefits.[5] After the public school reported dozens of additional unexcused absences concerning each child, each school year, the Harrisonburg City Public Schools conducted an interdisciplinary team meeting to address the children's excessive absenteeism. The interdisciplinary team recommended that the children attend summer school in 2022, but Baker failed to enroll any of the children in summer school.

In July of 2022, HRSSD received a report that Baker was using methamphetamine in the children's presence. When a social worker visited her residence the following day, a man at the residence informed the social worker that the family was not home, but a neighbor later informed the social worker that the family had been home all day. HRSSD continued attempting to contact Baker through visits, phone calls, and text messages to no avail. The social worker ultimately located the family at the maternal grandmother's home in Bridgewater. After knocking on the grandmother's door repeatedly, the social worker testified that she advised the occupants of the home that she would contact law enforcement for assistance. Only then did the children's father immediately open the door and report that Baker was asleep in another room.

---

[5] Although Baker had claimed she was unemployed because she could not leave her children alone with their biological father, the children's father was incarcerated at this time.

When the social worker informed Baker of the report that she had used methamphetamine in front of her children, Baker responded that "meth has never been [my] drug of choice" and that she was only currently smoking marijuana. When the social worker interviewed the children, the youngest child "describe[d] how marijuana is consumed and pointed out [that] the zigzag wrap laying on a nearby table was used to roll marijuana blunts." After the social worker instructed Baker to submit to a drug screen of her urine, she admitted to using methamphetamine and "half a strip" of Suboxone. Baker's drug screen tested positive for methamphetamines, amphetamines, and buprenorphine, the active ingredient in Suboxone.

A few days later, the social worker visited Baker again at her mother's home and instructed her to submit to another urine screen. She also requested that the children's hair follicles be tested for illegal substances later that day. During the conversation, Baker became "irate," stating that she would "contact their lawyer and would no longer cooperate" with HRSSD before shutting the door in the social worker's face. Later, when another social worker spoke with Baker on the phone, Baker's speech was "slurred and pressured," and she accused HRSSD "of tampering with the urine drug screens." Baker stated that she had lied about using methamphetamine "to see what would happen."

HRSSD finally removed the children from Baker's care on August 5, 2022. The JDR court adjudicated the children as abused or neglected for a third time before approving the initial foster care plan goal of returning home with a concurrent goal of relative placement. Following the children's removal, HRSSD provided Baker with a psychological evaluation and mental health counseling, after which Baker received a dual diagnosis of substance use disorder and major depressive disorder. Between September 2022 and October 2023, Baker attended only 6 out of the 12 scheduled counseling sessions and was discharged due to non-attendance. Baker also missed several required drug screens, but of the drug screens she completed, she consistently tested positive

for methamphetamine use. As of February 2024, Baker had continued to test positive for methamphetamine.

Following another period of unemployment, Baker began working as the maternal grandmother's caretaker in January of 2023. But HRSSD was "concern[ed] regarding the stability of the employment due to [Baker's] tumultuous relationship" with the maternal grandmother. Baker did not have a stable home during this time and had been residing either with the maternal grandmother or in motels.

Although Baker regularly attended supervised visitation with the children and the visits were generally positive, Baker continually "gave the children false hope by stating the 'list was almost completed,'" insinuating she had complied with HRSSD's requirements and the children could soon return home.

Upon removal, G.B. tested positive for methamphetamine exposure. After entering foster care, G.B. was placed in a treatment center "due to impulsive and inappropriate behavior," but made progress after receiving "group therapy, individual therapy, family therapy, and medication service." M.B. and A.B. were placed in the same "safe and nurturing" foster home and both received regular therapy, were successful at school, and were well-behaved.

"Due to continued use of methamphetamine[], homelessness, unemployment, violent behavior, and lack of mental health services," HRSSD petitioned to terminate Baker's parental rights and changed the foster care goal to adoption. After the JDR court terminated Baker's parental rights and approved the foster care goal of adoption, Baker appealed to the circuit court.

At the circuit court hearing,[6] Baker asked the court to compel the children's attendance at trial. The circuit court denied the motion, holding that, despite having ample time, Baker had

---

[6] A transcript or a written statement of facts of this hearing is not included in the record but is not indispensable to our review "as we are able to dispose of the case by considering other portions of the record." *Veldhuis v. Abboushi*, 77 Va. App. 599, 607 (2023).

"made no attempt to subpoena the children or compel their attendance prior to trial." The circuit court also held that none of the children were at the age of discretion to object to removal. The circuit court found that the children "cannot comprehend and appreciate the circumstances of the termination proceeding as they have been influenced so heavily by [Baker]." The circuit court reasoned that Baker had "inappropriate contacts" with the children and had attempted to influence them to advocate on her behalf. After considering the evidence and arguments, the circuit court terminated Baker's parental rights under Code § 16.1-283(C)(2) and approved the foster care goal of adoption.[7] Baker appealed.

## II. ANALYSIS

### A. *Standard of Review*

"On review of a trial court's decision regarding the termination of parental rights, we presume the trial court 'thoroughly weighed all the evidence, considered the statutory requirements, and made its determination based on the child's best interests.'" *Joyce v. Botetourt Cnty. Dep't of Soc. Servs.*, 75 Va. App. 690, 699 (2022) (quoting *Norfolk Div. of Soc. Servs. v. Hardy*, 42 Va. App. 546, 552 (2004)). "Where, as here, the court hears the evidence *ore tenus*, its finding is entitled to great weight and will not be disturbed on appeal unless plainly wrong or without evidence to support it." *Simms v. Alexandria Dep't of Cmty. & Hum. Servs.*, 74 Va. App. 447, 470 (2022) (quoting *Fauquier Cnty. Dep't of Soc. Servs. v. Ridgeway*, 59 Va. App. 185, 190 (2011)).

### B. *Baker has not preserved any challenge to the effectiveness of her counsel.*

Baker contends that her trial counsel was ineffective by failing to subpoena witnesses and by preventing her from "participat[ing] during trial." We find this argument waived.

---

[7] The circuit court also terminated father's parental rights to the children. This Court dismissed father's appeal for failing to file an opening brief on time. *Baker v. Harrisonburg Rockingham Soc. Servs. Dist.*, No. 1230-24-3 (Va. Ct. App. Oct. 18, 2024) (order).

"Ordinarily, '[t]he Court of Appeals will not consider an argument on appeal which was not presented to the trial court.'" *Fletcher v. Commonwealth*, 72 Va. App. 493, 510 (2020) (alteration in original) (quoting *Ohree v. Commonwealth*, 26 Va. App. 299, 308 (1998)). "No ruling of the trial court . . . will be considered as a basis for reversal unless an objection was stated with reasonable certainty at the time of the ruling, except for good cause shown or to enable this Court to attain the ends of justice." Rule 5A:18.

Here, the record demonstrates that Baker did not alert the circuit court to her concerns, so she may not raise them for the first time on appeal. Rule 5A:18. Baker has not invoked either exception to Rule 5A:18 and we do not consider them sua sponte. *Spanos v. Taylor*, 76 Va. App. 810, 827-28 (2023). Therefore, this assignment is waived, and we do not consider it.[8]

C. *The circuit court did not err in terminating Baker's residual parental rights.*

Citing her "extremely close" relationship with her children, Baker contends that termination was not in the children's best interest. We disagree and affirm the termination of Baker's parental rights, based on the circuit court's factual findings and the deference afforded those findings on appeal.

Code § 16.1-283(C)(2) authorizes a court to terminate residual parental rights if:

> The parent or parents, without good cause, have been unwilling or unable within a reasonable period of time not to exceed 12 months from the date the child was placed in foster care to remedy substantially the conditions which led to or required continuation of the child's foster care placement, notwithstanding the reasonable and appropriate efforts of social, medical, mental health or other rehabilitative agencies to such end.

We have previously noted that the "twelve-month time limit [in Code § 16.1-283(C)(2)] . . . was designed to prevent an indeterminate state of foster care 'drift' and to encourage timeliness by

---

[8] We note that generally claims of ineffective assistance of counsel are not viable on direct appeal. *Lenz v. Commonwealth*, 261 Va. 451, 460 (2001).

the courts and social services in addressing the circumstances that resulted in the foster care placement." *Tackett v. Arlington Cnty. Dep't of Hum. Servs.*, 62 Va. App. 296, 321 (2013) (alterations in original) (quoting *Akers v. Fauquier Cnty. Dep't of Soc. Servs.*, 44 Va. App. 247, 256 (2004)). "[S]ubsection C termination decisions hinge not so much on the magnitude of the problem that created the original danger to the child, but on the demonstrated failure of the parent to make reasonable changes." *Yafi v. Stafford Dep't of Soc. Servs.*, 69 Va. App. 539, 552 (2018) (alteration in original) (quoting *Toms v. Hanover Dep't of Soc. Servs.*, 46 Va. App. 257, 271 (2005)). The statute "requires the court to determine whether the parent has been unwilling or unable to remedy the problems during the period in which [s]he has been offered rehabilitation services." *Toms*, 46 Va. App. at 271.

Here, the record establishes that HRSSD provided Baker an abundance of services once it became involved in 2015, including counseling, substance abuse treatment, supervised visitation, and a parenting coach. Despite these services, Baker continued to test positive for methamphetamine and had been discharged from mental health services for noncompliance. HRSSD also provided financial assistance for Baker to secure stable housing, but Baker's housing and employment remained unstable. Since HRSSD became involved, the children were adjudicated as abused or neglected three times.

Despite the operation of Code § 16.1-283(C)(2), Baker does not argue that she improved the conditions that led to the children's removal from her care. Rather, she argues that it was not in the best interests of her children to be taken from her because she alleges the children's "mental health has deteriorated" since entering foster care. But the record contains evidence that the children have thrived in foster care, were provided a wide variety of therapy and counseling, and had shown improvement in behavior and school performance. Additionally, the children had been in foster care for over 20 months by the time of the circuit court's hearing, experiencing the exact "drift" that

Code § 16.1-283(C)(2) seeks to remedy. *Tackett*, 62 Va. App. at 321 (quoting *Akers*, 44 Va. App. at 256). "It is clearly not in the best interests of a child to spend a lengthy period of time waiting to find out when, or even if, a parent will be capable of resuming h[er] responsibilities." *Simms*, 74 Va. App. at 463 (quoting *Harrison v. Tazewell Cnty. Dep't of Soc. Servs.*, 42 Va. App. 149, 162 (2004)). Based on this record, the circuit court's termination of mother's parental rights was not "plainly wrong or without evidence to support it." *Id.* at 470 (quoting *Ridgeway*, 59 Va. App. at 190).

## III. CONCLUSION

For the foregoing reasons, we find no error. Therefore, the circuit court's judgment is affirmed.

*Affirmed.*